In the Matter of BEECHWOOD MEDI-CENTER OF FLINT, INC., a Michigan Corporation, Debtor.

Alexander STEINMETZ, Trustee, Plaintiff.

v.

John SOROKIN, Defendant.

Bankruptcy No. 77–60298.
Adv. No. C–5.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Sept. 27, 1982.

Robert J. White, Flint, Mich., for debtor.

William W. Wumkes, Flint, Mich., for plaintiff/trustee.

## MEMORANDUM OPINION

HAROLD H. BOBIER, Bankruptcy Judge.

Alexander Steinmetz, Trustee, hereinafter trustee, instituted suit in this court against John Sorokin, CPA, and chief executive officer and president of Beechwood Medicenter of Flint, Inc., to recover certain sums of money paid to Mr. Sorokin, hereinafter defendant.

*Findings of Fact*

Beechwood filed a Chapter 11 petition July 27, 1977, and was adjudicated a bankrupt November 1, 1977. At that time Alexander Steinmetz was appointed trustee. This adversary proceeding was filed August 21, 1980.

From the end of its fiscal year of October 31, 1976 to July 27, 1977, Beechwood was insolvent with general creditors having claims in existence that entire time provable at the time of bankruptcy.

Defendant was president of Beechwood having full knowledge of its financial status during the times involved in this opinion. He was also a creditor of Beechwood during this time for money loaned, but in April of 1977 he converted his debt position of $200,-000.00 to that of a shareholder.

During the period from January 7, 1977 to July 27, 1977, Beechwood was operating through two bank accounts. One was a regular commercial account in the Michigan National Bank. The other was an account in the Citizens Bank under the name of Virginia Bease, a bookkeeper/employee of John Sorokin in his accounting firm. The Bease account was created to prevent creditors from attaching Beechwood funds by garnishment, to protect the Beechwood payroll, and to receive funds of investors of Beechwood. When Beechwood funds were transferred to the Bease account, defendant was charged with a debit on the books of Beechwood. When funds of the Bease account were transferred to Beechwood or expended for Beechwood, defendant received a credit on the books of Beechwood.

Defendant was paid the following sums by Beechwood on checks from its regular account in the Michigan National Bank:

| | |
|---|---|
| 1–7–77 | $5,000.00 |
| 1–10–77 | 3,000.00 |
| 1–26–77 | 2,707.00 |
| 3–17–77 | 6,598.00 |
| 3–25–77 | 500.00 |
| 4–1–77 | 500.00 |
| 4–7–77 | 300.00 |
| 4–18–77 | 9,500.00 |
| 5–18–77 | 3,000.00 |
| 6–3–77 | 600.00 |
| 6–15–77 | 3,503.00 |
| 6–24–77 | 500.00 |
| 6–30–77 | 500.00 |
| 7–6–77 | 1,223.00 |
| 7–8–77 | 600.00 |
| 7–26–77 | 29,334.05 |
| 7–27–77 | 4,939.90 |

Defendant testified that payments were for salary. The trustee testified from the books and records that the payments of 5/18/77 in the amount of $3,000.00 and that of 6/24/77 of $500.00 appear on the Beechwood books as loan payments, and the payment of 7/8/77 of $600.00 appeared as salary.[1]

Defendant testified that the payments were either for salary or were used for the benefit of Beechwood.

The trustee testified from the books and records that he could not find evidence in the books of Beechwood that any of the sums listed above were transferred to the Beechwood account in the Michigan National Bank. He further testified that he did not learn of these payments until March of 1981 when the Bease account was analyzed. They did not appear in the books and records of Beechwood Medicenter. This testimony was not refuted by any probative evidence.

The trustee's original complaint was filed August 21, 1980 and contained only three amounts claimed by the trustee against the defendant as preferential payments. After auditing the Bease account, the trustee filed an amended complaint on April 28, 1981 alleging the further transactions as stated above.

The Court ordered the plaintiff to file a brief making findings of fact and findings of law within 60-days of date of receiving a transcript of the proceedings which the plaintiff did; the defendant's brief was due on April 9, 1982 and although defendant's counsel has been notified that his brief is long overdue, defendant has not as yet filed the same. Consequently, this opinion is written without the benefit of the defendant's brief.

In the answer to complaint filed by defendant on September 23, 1980, no affirmative defense was raised by the defendant.

In answer to plaintiff's amended complaint, the defendant filed on June 11, 1981 an affirmative defense that the trustee's action was barred by section 11(e) of the Bankruptcy Act.

*Issues Involved*

*Fraudulent Transfers.* Were the payments from the Bease account to Sorokin fraudulent transfers within the meaning of Section 67 of the Bankruptcy Act?

*Preferential Transfers.* Were the payments to Sorokin which were made within

---

1. A claim for wages is limited to $600 and three months before commencement of the proceedings. Section 64(a)(2).

four months of July 27, 1977 preferential within the meaning of Section 60 of the Bankruptcy Act?

*Statute of Limitations.* To what extent, if any, is this action barred by Section 11(e) of the Bankruptcy Act?

*Findings of Law*

*Fraudulent Transfers*

The payments from the Bease account to Sorokin constituted fraudulent transfers within the meaning of Section 67 of the Bankruptcy Act.

Section 67(d)(2) provides:

Every transfer made and every obligation incurred by a Debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent...

(d) as to then existing and future creditors, if made or incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors.

The United States District Court for the Eastern District of New York, deciding *In the Matter of Donald Rowe,* 234 F.Supp. 114 defined the phrase "intent to hinder, delay or defraud his creditors" found in Section 14(c)(4) of the Bankruptcy Act at page 116:

It is not necessary that intent to defraud be proved. If the intent to hinder or delay exists, it is sufficient. A conveyance is illegal if made to defraud the creditors of the grantor, but equally, if is illegal if made with intent to hinder or delay them.

The Court reversed the referee's finding based on absence of an intent to defraud as being clearly erroneous.

*Ortlieb v. Baumer,* 6 F.Supp. 58, Dist.Ct., S.D. New York, cites the same rule at Page 61:

Under the law a transfer which hinders or delays creditors is denounced in law equally with a transfer that defrauds.

In the case of *Process-Manz Press, Inc.,* 236 F.Supp. 333, a lendor, Armstrong, loaned money to the bankrupt and obtained a lien which caused a withdrawal of working capital. The Court set aside the transaction as fraudulent, stating at Page 346 that the intent to hinder or delay is condemned equally with an intent to defraud creditors and that transfers which benefit owners of a business personally and not the business, are fraudulent within the meaning of Section 67(d)(2).

■ It makes no difference that the conveyance was made upon a valuable consideration, if made for the purpose of hindering, delaying or defrauding creditors. *In the Matter of Marcel Freudmann,* 362 F.Supp. 429 at page 433. This case states at page 432 that "actual intent to defraud" does not require an intent to defraud all creditors but that it is enough if there is an intent to defraud some creditors and creditors "at the end of the line" presumably qualify as well as any other creditors. The Court explains that the first three categories of Section 67(d)(2), (a), (b) and (c), require "without fair consideration" but that in the fourth category, Section 67(d)(2)(d), there is no requirement that the transfer be "without fair consideration" so long as there is actual intent to defraud.

In an old case in the Eastern District of Michigan, *In re Pease,* 129 F. 446, a lendor loaned the bankrupt money and took a mortgage on the bankrupt's stock. The lendor knew that the bankrupt would use the proceeds of the loan to prefer certain creditors which in fact occurred within four months of bankruptcy. The Court set aside the mortgage, holding that the intent and effect of the mortgage was to hinder and delay, if not defraud.

The former Section 67(e) provided that all conveyances made by a bankrupt within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors or any of them, shall be null and void against the creditors of such a debtor. A good analysis of "intent to hinder, delay and defraud" is set forth at page 304 of *Lovett v. Faircloth, In re Lilly* 10 F.2d 301 5th C.C.A. The bankrupt had obtained a loan giving a lien on stock in trade, while

insolvent, in order to pay certain unsecured creditors. It was argued that the Section referred only to actual fraud, and that none had been shown. The Court rejected this argument, stating:

> We think that proof of intent to hinder or delay is proof of actual fraud. A conveyance made with intent to hinder or delay creditors is as much within the terms of Section 67e as is a conveyance made with intent not to pay them at all. If this were not true, the words 'hinder or delay', which usually appear in statutes against fraudulent conveyances, would be meaningless.

> Conveyances may be fraudulent because the Debtor intends to put the property and it's proceeds beyond the reach of his creditors, or because he intends to hinder and delay them as a class, or by preferring one who is favored above the others.

■ Standing alone, the intent to prefer, does not render a transfer fraudulent, but it is an important factor in determining whether an intent to defraud exists. *Prisbrey and Zion v. Noble*, 505 F.2d 170.

Actual intent to hinder, delay or defraud creditors under 67(d)(2)(d) was found in the matter of *Allied Development Corporation*, 435 F.2d 372, 7th C.C.A. when Eisenberg made a loan to the bankrupt corporation and agreed not to record his mortgage because he knew the credit situation and didn't want to affect the corporation's credit.

■ Sorokin testified that a prime reason for establishing the Bease account was to avoid garnishment of the Beechwood account by creditors, which he said could have happened at any time. Clearly the payments made to Sorokin, even if funneled to other creditors of Beechwood, were part of a mechanism to hinder, delay and defraud other existing creditors.

Sorokin testified that his relation to Beechwood changed from that of a creditor to that of a shareholder as of April 30, 1977. If so, the transfers to Sorokin made between April 30, 1977 and July 27, 1977 violate Section 67(d)(2)(a) which states:

> Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent;

Clearly, the transfers of money made to the defendant or to his benefit come well within Section 67(d)(2)(a) and constitute fraudulent transactions.

### Preferential Transfers

■ Transfers of Beechwood funds were made to Sorokin within four months of the Chapter XI petition filed July 24, 1977. If Sorokin was then a creditor, the transfers to him would constitute preferences as defined in Section 60 of the Bankruptcy Act.

Section 60(a)(1) provides:

> A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

If Sorokin was a creditor at the time of the transfers, they were made on account of an antecedent debt because he stated that he was a creditor from the beginning of the Beechwood operation. Beechwood was insolvent at the time of the transfers and when Sorokin received the money represented by the checks, either by cashing them or by deposit into his business account, he then received a greater percentage of his debt than other creditors of the same class.[1a] Other creditors of the same

---

**1a.** Unsecured claims filed totaled $1,383,795.00 of which $362,392.00 are priority tax claims.

**944**

class were unsecured creditors shown on the Beechwood schedules to which reference was made in the testimony of Sorokin. Clearly, the payments made to the defendant within four months of bankruptcy were preferential within the meaning of Section 60.

*Statute of Limitations*

██ This action presents an exception to the statute of limitations contained in Section 11(e) of the Bankruptcy Act.

Section 11(e) reads:

A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy ...

In the case of *Dabney v. Levy,* 191 F.2d 201, C.C.A.2d, aff'g 92 F.Supp. 551, Cert. den. 342 U.S. 887, 72 S.Ct. 177, 96 L.Ed. 665 the trustee sued after the Statute of Limitations contained in Section 11(e) had passed. However, the Court held that the Trustee's action was not barred because the two year limitation does not begin to run in cases of "fraud" until the trustee learns, or should with diligence have learned, of the wrong. This exception applies though there be no effort on the part of the person committing the fraud to conceal it. At page 204, the Court cites *Bailey v. Glover,* 21 Wall. 342, 22 L.Ed. 636 a Supreme Court opinion interpreting the predecessor of the bankruptcy act in 1874 to mean that in cases of "fraud" the trustee always has two years from the time he learns of the "fraud". The Court also quoted Judge Frankfurter in *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 as saying that the equitable doctrine of *Bailey v. Glover* is read into every Federal statute

Assets total approximately $250,000.00. General creditors will receive no dividends.

**2.** *In re Provencher,* 614 F.2d 823 (1st Cir.1980).

of limitations and that the statute does not begin to run until the defrauded party has discovered or failed in reasonable diligence to discover the wrong.[2]

The trustee did not discover the payments to Sorokin from the Bease account until March of 1981 and he did not lack reasonable diligence in failing to discover the payments prior to that time as the transfers did not appear in the debtor's books and records except as to the three items alleged in trustee's original complaint. They were hidden transactions, knowingly hidden and defendant is found to have committed deliberate fraud in this respect.

The facts of this case are such that this court cannot find that the trustee lacked due diligence in not promptly discovering the self-dealing of the defendant. The record presents a case of self-dealing by an insider who concealed transfers of corporate funds to himself. The concealment was effected by not making entries in the corporate records, where the trustee would have found them. The defendant, a practicing C.P.A. violated ordinary accounting standards by failing to list the transfers of money in the corporate records. This case presents a classical case of self-dealing, and equity alone should correct the fraud.

In Michigan, the statute of limitation regarding an action for fraud is six years. Under the facts and case law interpreting Section 11(e) the trustee's action is not barred.

*Failure to Plead*

██ In the case of *Heller v. Smither,* 437 F.Supp. 1, (1977) in a well documented and reasoned opinion, Judge Morton held:

Under Federal Rules of Civil Procedure affirmative defense, such as bar of statute of limitations, must be pleaded specifically in the first responsive pleading or it is deemed to be waived.[3]

**3.** Since defendant did not raise the statute of limitations in his answer to the initial complaint the privilege is waived.

Wright & Miller, Federal Practice and Procedure, Section 1278.

*Conclusion*

The facts determine that the defendant received, within 4 months of bankruptcy, $54,499.95 for which trustee shall have judgment in a like amount as a preference under Section 67.

The facts also determine that within the year preceding bankruptcy the defendant paid himself $72,305.90 which was a fraudulent transfer of funds under Section 67 of the Act and for which the trustee shall have judgment in a like amount.

It is further held and determined that defendant shall not avail himself of the defense of the statute of limitations.

An order shall be drawn in accordance with this opinion.