**In re Friedrich-Wilhelm METZELER, as Trustee in Bankruptcy for Uni-Petrol Gesellschaft fuer Mineraloelprodukte m.b.H., a German limited liability company.**

Friedrich-Wilhelm METZELER, Trustee, Petitioner,

v.

BOUCHARD TRANSPORTATION CO., INC., Respondent.

Bankruptcy No. 85 B 11183.

United States Bankruptcy Court, S.D. New York.

Nov. 12, 1986.

As Corrected Dec. 15, 1986.

Hughes Hubbard & Reed by Thomas D. Goldberg, James W. Giddens, New York City, for trustee.

Beck, Halberg & Williamson by Herbert B. Halberg, New York City, for respondent.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Friedrich-Wilhelm Metzeler, as Trustee for Uni-Petrol Geselleschaft Fuer Mineraloelprodukte m.b.H. ("Uni-Petrol") seeks the permission of this Court, pursuant to Rule 15 of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 15, made applicable by Rule 7015 of the Rules of Bankruptcy Procedure, Bankr.R.Proc. 7015, to file an amended petition under § 304 of the Bankruptcy Code, 11 U.S.C. § 304 (1984) (the "Code"). The principal purpose of the amendment is to set forth certain additional transactions claimed to have been preferences or fraudulent transfers. The transactions occurred in the spring of 1984. They thus fall outside the two year period provided by § 546(a) of the Code. 11 U.S.C. § 546. The Trustee asserts that the amendment may relate back to the filing of the original petition under Rule 15(c). Fed. R.Civ.P. 15(c). Alternatively, he asserts that the two year period did not commence until discovery of the transactions.

## I

From the papers before us, it appears that prior to the commencement of a bankruptcy proceeding on July 24, 1984 in the circuit court for Dusseldorff, West Germany, Uni-Petrol traded in oil products and employed Triad Petroleum, Inc. ("Triad") to engage barging and other services relating to the off-loading and transport of oil products cargo in New York Harbor. Defendant Bouchard Transportation Co., Inc. ("Bouchard") and others provided such services at the request of Triad. Triad would be instructed by a representative of Uni-Petrol as to whether Uni-Petrol or an allegedly unaffiliated American company known as Uni-Petrol, Inc. should be billed for the services and then relay that information to Bouchard and other providers of such services.

In the Trustee's original petition it is alleged that the petition was brought to recover "amounts that were preferentially and fraudulently transferred by Uni-Petrol to [defendant] on the eve of bankruptcy ..." (Pet. ¶ 1). It is further asserted that "In the week before Uni-Petrol was declared bankrupt on July 24, 1984," Uni-Petrol transferred to defendant $47,216.88 on July 18, 1984, $446,745.86 on July 20, 1984, and $86,909.90 on July 23, 1984 through electronic funds transfers (Pet. ¶ 7). According to the petition, the transfers were not made in the ordinary course of business in that: (i) it was ordinary practice for Uni-Petrol to make payments to defendant only after receipt of an invoice and the invoice became due some 30 to 60 days thereafter and the payments included $232,950.04 as anticipated amounts due on invoices not rendered or that had not become due (Pet. ¶ 8(a), (b)); (ii) the transfers also included $66,482.53 for services rendered to Uni-Petrol, Inc. in which one of the two Uni-Petrol managing directors was a "substantial shareholder" (Pet. ¶ 8(c)); (iii) additional sums were paid on invoices at least seven months overdue (Pet. ¶ 8(d)); and (iv) the July 23, 1984 transfer included payment of $19,586.03 on an invoice previously paid by virtue of the July 20, 1984 transfer (Pet. ¶ 8(e)).

The terms of § 547 and § 548 of the Code are then stated in claiming that the transfers were preferential and fraudulent. It is also alleged that the defendant received the transfers "with knowledge that the payments would be detrimental to other creditors of Uni-Petrol." (Pet. ¶ 12).

The proposed amendment would change the allegations made with respect to the transfers originally pleaded and add four additional transfers in payment for services furnished to Uni-Petrol, Inc. and not Uni-Petrol: April 17, 1984—$12,591.12; May 1, 1984—$218,663.11; May 31, 1984—$173,243.84; and June 28, 1984—$22,895.24. With respect to the transfers originally pleaded, the allegation that the transfers were not made in the ordinary course of business is dropped. Instead, the factual allegations supporting that assertion are repleaded as evidence of intent to defraud creditors.

No such allegations are made with respect to the additional transfers. As to them the allegations implying an overall scheme are dropped. The amended petition does not state that a Uni-Petrol managing director was a substantial shareholder in Uni-Petrol, Inc., that Bouchard knew that the payments were detrimental to other creditors or even that these payments were made for invoices not yet due or long outstanding. All that is pleaded with respect to these transfers is that they were made in payment of invoices sent to Uni-Petrol, Inc.

In his motion for leave to amend, the Trustee did not initially request that the proposed amendment relate back under Rule 15(c). He asserted only that the amendment be permitted pursuant to Rule 15(a). Upon Bouchard's raising the two year statute of limitations provided by § 546(a) of the Code and the one year statute of limitations allegedly provided by West German Law that governs the bankruptcy proceeding (Respondent's Supp. Brief at 18), the Trustee orally claimed compliance with Rule 15(c) at the hearing and asserted that the two year period had

not run. The parties, agreeing that no evidentiary hearing was required, were directed to file supplemental papers addressing these issues with the Trustee to respond to, *inter alia,* Bouchard's contentions that Rule 15(c) was not satisfied and that the federal tolling doctrine with respect to fraud cases, *see Dabney v. Levy,* 191 F.2d 201, 205–06 (2d Cir.), *cert. denied,* 342 U.S. 887, 72 S.Ct. 177, 96 L.Ed. 665 (1951); *Quaid v. Friedman (In re Friedman),* 15 B.R. 493, 495–96 (Bankr.N.D.Ill. 1981), did not permit the assertion of the additional transfers.

But all that the Trustee submitted was an affidavit of counsel dealing with discovery in this action. That affidavit contains no description of the Trustee's review, if any, prior to bringing the original petition, of payments made by Uni-Petrol in the year prior to its bankruptcy. Nor does it contain any description of the Trustee's review, if any, of such payments after the petition was brought. Bouchard notes that the payments should have been revealed upon examination of Uni-Petrol's disbursements ledger (Respondent's Supp. Brief at 2) and that discovery has shown that documentation regarding all transactions with Uni-Petrol, Inc. was contemporaneously sent to Uni-Petrol and therefore should have been available to the Trustee (Respondent's Supp. Brief at 3; DiMauro Deposition at 36–37). To this there is simply no response.

Rather, the Trustee attempts to show that his counsel diligently pursued discovery in this action and did not learn until July 1986 that the additional payments were made for invoices rendered to Uni-Petrol, Inc. But by February 7, 1986, Bouchard had delivered to the Trustee's counsel copies of all invoices it had rendered to Uni-Petrol, Inc. and Uni-Petrol during the relevant period. Thus, had there been any efforts by the Trustee to sort out the Uni-Petrol records, Uni-Petrol's alleged making of payments for services rendered to Uni-

Petrol, Inc. would appear to have been easily determinable by comparing the payments with the invoices or totalling both. The motion to amend, however, was not noticed until some six months later. To this the Trustee's counsel responds that it appears that bills for some services rendered for Uni-Petrol, Inc. were sent to Uni-Petrol and that some invoices were retyped (Goldberg Affidavit ¶ 8). But the deposition testimony is that it was the regular practice of Triad, in engaging Bouchard and others to perform services, to send a copy of the conforming telex to Uni-Petrol (DiMauro Deposition at 37).

The motion to amend was not made until August 25, 1986. During the period from February to July, discovery was taken of Triad. According to the Trustee's counsel, he, through examination of the Triad files, was able to identify the additional transactions.

## II

Since *Bailey v. Glover,* 88 U.S. (21 Wall) 342, 348, 22 L.Ed. 636 (1874), it has been the rule that a federal bankruptcy statute applicable to fraudulent transfer actions is subject to tolling until the plaintiff has " 'discovered, or has failed in reasonable diligence to discover' the wrong." *Dabney v. Levy,* 191 F.2d 201, 205 (2d Cir.), *cert. denied,* 342 U.S. 887, 72 S.Ct. 177, 96 L.Ed. 665 (1951); *accord Steinmetz v. Sorokin (Matter of Beechwood Medicenter of Flint, Inc.),* 23 B.R. 939, 944 (Bankr.E.D.Mich. 1982); *In re Friedman,* 15 B.R. 493, 495 (Bankr.N.D.Ill.1981). *Contra Wells v. Place,* 92 F.Supp. 477 (N.D.Ohio 1950).

No case called to our attention or which we have been able to find discusses the applicability of this doctrine to § 546(a) of the Code. That section provides a two year period from the appointment of a trustee for bringing a fraudulent transfer action.[1] It does not expressly contain such

---

1. Section 546(a) speaks in terms of an appointment of a trustee under Title 11. The Trustee maintains that § 546(a) applies to this action although he was appointed under West German law. Bouchard appears to claim that West German law contains a one year statute of limitations. Because that statute was not presented to us, as contemplated by Rule 44.1 of the Federal

a tolling provision. Defendant's argument that Congress should therefore be presumed to have legislatively overruled these cases is, nevertheless, without merit. The analysis runs the other way. Where Congress gives no indication of disturbing prior authoritative holdings in drafting the Bankruptcy Code, it is to be presumed to have accepted those holdings to the extent they are consistent with other provisions of the Code. *See Midlantic National Bank v. New Jersey Department of Environmental Protection,* —— U.S. ——, 106 S.Ct. 755, 759–60, 88 L.Ed.2d 859 (1986).

To be sure there are substantial policy reasons for providing a strict two year period. To do so would strongly encourage early dividends to creditors. The risk of loss of commission or even the imposition of a surcharge for failure to discover causes of action that could be discovered with diligence would sharply motivate efficient estate administration.

But those policies are substantially accommodated by the reasonable diligence requirement upon which the tolling doctrine rests. As articulated by Justice Miller in writing for the *Bailey* court,

> where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud has been discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it.

88 U.S. (21 Wall) at 348. The rule thus requires due diligence on behalf of trustees and thereby supports the policies noted above. We, therefore, hold that the rule of *Bailey v. Glover* applies to § 546(a) of the Code. To rule otherwise would immunize fraudulent transfers not discovered by a trustee who acted with such due diligence. There is no indication that Congress sought such a result.

Rules of Civil Procedure and the parties have not briefed its application, we do not address its applicability here. Instead, for purposes of this motion, we assume that § 546(a) applies. Nothing in this opinion, moreover, should be con-

## III

■ That conclusion, however, is but the beginning of our inquiry. The "doctrine has application only where the plaintiff has 'exercised reasonable care and diligence in seeking to learn the facts which would disclose fraud, and [u]nawareness of facts or law, alone, does not justify suspending the operation of the statute.'" *Arneil v. Ramsey,* 550 F.2d 774, 781 (2d Cir.1977) (quoting *Morgan v. Koch,* 419 F.2d 993, 997 (7th Cir.1969)). The test is an objective test. *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983). Thus,

> '[w]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.'

*Ibid.* (quoting *Higgins v. Crouse,* 147 N.Y. 411, 416, 42 N.E. 6 (1895)). A statute of limitations will not be tolled to await a plaintiff's "leisurely discovery of the full details of the alleged scheme." *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir.1970). Rather, the duty of inquiry can be satisfied by a "rather painstaking investigation." *Freschi v. Grand Coal Venture,* 767 F.2d 1041, 1047 (2d Cir.1985), *vacated on other grounds,* —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 731 (1986).

■ On a motion for leave to serve an amended pleading, the movant has the burden of persuasion. Leave to amend is to be freely granted as Rule 15(a) provides. *See* Fed.R.Civ.P. 15(a). But it is to be denied where the additional claims sought to be asserted by the amendment would be barred by the statute of limitations unless the amendment relates back under Rule 15(c). *E.g., Oliner v. McBride's Indus-*

strued as an indication that the Court has made any determination as to whether a claim under § 547 or § 548 of the Bankruptcy Code can be asserted under § 304 of the Bankruptcy Code.

*tries, Inc. (In re Zsa Zsa Limited),* 106 F.R.D. 9, 12 (S.D.N.Y.1985); *Marine Midland Bank v. Keplinger & Associates, Inc.,* 94 F.R.D. 101, 104 (S.D.N.Y.1982). In this exercise, it should not be required that the movant establish the absence of the statutory bar by a preponderance of the evidence. That bar, as provided by Rule 8(c), is an affirmative defense. *See* Fed.R. Civ.P. 8(c). Moreover, no evidentiary hearing is required or contemplated on such a motion.

But the movant should set forth sufficient facts in an affidavit of a person having personal knowledge of them, which, if proven at trial, show the tolling doctrine applies. *Cf. Brick v. Dominion Mortgage & Realty Trust,* 442 F.Supp. 283, 304 (W.D. N.Y.1977) ("Plaintiffs have the burden of showing that they exercised reasonable care and diligence to discover the alleged fraud."). To permit amendment for the purpose of alleging claims barred by a statute of limitations is a nullity and only increases the heavy costs of litigation.

■ Here, the Trustee did not make a sufficient showing that the tolling doctrine applies. While he argues that diligence was shown in his pursuit of information from Triad, the four months it took to obtain it does not speak of diligence. That is particularly so since it appears from the affidavit of counsel (Goldberg Affidavit ¶ 9) that discovery was sought from Triad for a two year period, apparently without regard for the one year limitation of recovery for fraudulent transfers. *See* 11 U.S.C. § 548. Although Triad was not fully cooperative and the subpoena to it lapsed and a second subpoena was obtained, Triad ultimately agreed to produce the documents during the one year period.

Most significantly, there is nothing that indicates diligence by the Trustee from the period July 24, 1984 to November 1985 when it initially sought discovery from Bouchard. Apparently, he reviewed documents for the week prior to bankruptcy, for in his original petition he set forth three distinct transfers even to the degree of connecting invoices to payments and identifying a $66,482.53 payment for services rendered to Uni-Petrol. The finding of some transfers, including one for $66,-482.53 alleged to be similar to the additional transactions sought to be added, and the conclusion that they were fraudulent surely mandates a review of earlier payments to determine if they are similar. *Armstrong,* 699 F.2d at 88. The absence of any indication of such a review, even in response to defendant's contention that the payments would be revealed by Uni-Petrol's books, is tantamount to a failure to show diligence. It does not satisfy the due diligence and absence of neglect required by the *Bailey* line of cases and necessary to support the application of the tolling doctrine to § 546(a) in light of the policies noted above.

### IV

■ With it apparent that no reason has been offered for not tolling the bar of § 546(a) with respect to the additional transactions, we turn to the issue of whether the proposed amendment asserting those claims relates back to the timely filing of the original petition pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.[2]

This issue of whether the averment of a proposed amended petition alleging fraudulent transfers in addition to those originally alleged, may relate back to the original petition is comparable to the issue recently addressed by this Court in *Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.),* 67 B.R. 304 (Bankr.S.D.N.Y.1986). There, the trustee sought permission of this Court to add several additional preference claims to the one originally alleged. Indeed, it is the same issue. Neither party suggests that fraudulent transfer claims are to be treated differently from preference claims under Rule 15(c).

---

**2.** The parties agree that Rule 15, made applicable to adversary proceedings by Rule 7015 of the Rules of Bankruptcy Procedure, governs motions to amend petitions. Only if the proposed amendment does not relate back under Rule 15(c) do we need to address Rule 15(a).

Rule 15(c) provides that an amended pleading will relate back to the additional claims sought to be asserted "arose out of the conduct, transaction, or occurrence" originally pleaded. Where new transactions are alleged, the inquiry concerns "conduct" and "occurrences." In *Kam Kuo*, it was held that a review of applicable precedent demonstrated that preference claims concerning an additional transaction do not relate back if the transaction is different in kind from that originally alleged and if the original pleading did not put into issue conduct to which the additional transactions relate. Absent such an allegation, the defendant in that action could not have reasonably expected to litigate similar claims arising out of separate transactions. To the extent that *Tabacalera Cubana, S.A. v. Faber, Coe & Gregg, Inc.*, 379 F.Supp. 772 (S.D.N.Y.1974), upon which the Trustee principally relies, says anything more,[3] it is inconsistent with cases subsequently decided by the same court. *See Oliner v. McBride's Industries, Inc.*, 106 F.R.D. 9 (S.D.N.Y.1985); *Marine Midland Bank v. Keplinger & Associates, Inc.*, 94 F.R.D. 101 (S.D.N.Y. 1982). As noted in *Kam Kuo*, reading *Tabacalera* together with those cases and others leads to the conclusion noted above.

In the application of those considerations it is most noteworthy that the schemes intimated in the original petition, *i.e.*, to pay defendant to the derogation of other creditors shortly before bankruptcy and to pay the debt of a separate company in which a Uni-Petrol managing director was alleged to be a substantial shareholder, are not alleged in the proposed amendment even with respect to the originally pleaded transactions. The Uni-Petrol, Inc. relationship is not alleged and the additional trans-

actions are not claimed to be part of the scheme. Further, they are not claimed to be payments of "anticipated amounts" as is asserted for one of the original payments.

Moreover, the mere allegation that all of the transactions are fraudulent transfers does not make them part of the same conduct. First, the Trustee, in his original petition, asserted that the substantive allegations concerning the original transactions showed that they were entered into out of the ordinary course of business, apparently in order to avoid the exception to recovery of preferences provided for by § 547(c)(2) of the Code, and merely tracked the statutory elements of § 548 of the Code in pleading that they were fraudulent transfers in addition to preferences. Courts, however, have held that the mere pleading of a statute offers nothing to relate back to and that relation back under Rule 15(c) is not permitted. *In re Ideal Mercantile Corp.*, 244 F.2d 828, 830 (2d Cir.), *cert. denied*, 355 U.S. 856, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957); *In re Robitaille Farms, Inc.*, 2 B.R. 598, 600 (Bankr.D. Mass.1980); *In re Peachtree Warehouse Distributors*, 1 B.R. 706, 708 (Bankr.N.D. Ga.1979). *But see In re J.P. Linahan, Inc.*, 133 F.2d 688, 690 (2d Cir.1943). Second, the dropping of this allegation in the amendment indicates the lack of commonality.

The separateness of the alleged fraudulent transfers also serves to distinguish the *Tabacalera* holding that a pleading to collect accounts receivable may be amended to add different accounts and the amendment will relate back if the transactions arose from the same course of business and involve the same evidence. Under § 548(a), the test for each transaction is whether § 548(a)(1) or (a)(2) is satisfied.[4] These in-

---

**3.** *Tabacalera* is fully discussed in *Kam Kuo*, 67 B.R. at 307. For our purposes here it need only be recalled that the *Tabacalera* court permitted claims on additional invoices to be added to an action for goods sold and delivered and to relate back to the filing of the original complaint. In so holding, it observed that the transactions were similar, arose from the same course of dealings and concerned the same evidence. 379 F.Supp. at 776.

**4.** Section 548(a) provides:
The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was

volve substantial issues, *e.g.*, intent, insolvency or unreasonably small capital at the time of each transfer. The proof offered for one transaction is not governing as to another.

For these reasons, apparently, there is no indication that, merely because different transactions bear the same label, relation back is to be ordered on the ground that they arise from similar conduct. Courts have consistently treated preferential transactions as separate and distinct under Rule 15(c). *Dworsky v. Alanjay Bias Binding Corp.*, 182 F.2d 803, 805–06 (2d Cir.1950); *In re Robitaille Farms, Inc.*, 2 B.R. at 599–600. The same should be true of separate fraudulent transfers. Rule 15(c)'s requirement that the matter sought to be added by amendment "arose out of *the* conduct, transaction or occurrence" previously pleaded (emphasis added) contemplates as much. Similar conduct with respect to a separate transaction is not expressly included.

These observations, furthermore, lead to the conclusion that a defendant, because of the separateness of these elements, would not be put on notice that the allegation of three alleged fraudulent transfers contemplated the litigation of four earlier transactions during the one year period provided for by § 548(a). Indeed, the opposite conclusion would obtain. The originally pleaded transactions occurred shortly before bankruptcy. The claims sought to be added arose from earlier transactions. Significant elements of § 548(a), *e.g.*, undercapitalization, insolvency and intent to defraud creditors, are more likely to occur as a company approaches bankruptcy. If the earlier transactions were pleaded originally and the amendment sought to add later transactions, the likelihood of notice and

expectation would seemingly increase. Here the converse occurred.

We thus hold that the motion must be, and hereby is, denied in so far as it concerns the attempt to file an amended petition setting forth additional transactions. As noted, however, the amendment would also change the pleading of the original transactions. As to that, no objection has been raised. The motion is therefore granted to that limited extent. An amended petition making those changes may be filed within ten days of the date of this decision and order. It is

SO ORDERED.

or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date such transfer was made or such obligation that was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a).