**In re BOOKOUT HOLSTEINS, INC., Debtor.**

**BOOKOUT HOLSTEINS, INC., by its Trustee, HALDERMAN FARM MANAGEMENT SERVICES, INC., Plaintiff,**

v.

**SUPERBLEND, INC., John R. Bookout and Production Credit Association of the Fourth District, Defendants.**

**Bankruptcy No. 83–11175–REG.
Adv. No. 88–1057.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

May 1, 1989.

Grant F. Shipley and Edmond P. Kos, Fort Wayne, Ind., for plaintiff.

Richard K. Muntz, LaGrange, Ind., for Superblend.

Thomas A. Brown, Hartford City, Ind., for John Bookout.

Steven J. Ouellette, Fort Wayne, Ind., for Production Credit Ass'n.

## DECISION AND ORDER

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on motions to dismiss Plaintiff's complaint, filed on behalf of the Defendants John R. Bookout (Bookout) and Superblend, Inc. Both motions contend that Plaintiff's claims are barred by the applicable statute of limitations.

To assist the court in determining the issues raised by the motions, the parties submitted stipulations of fact which are applicable only for the limited purpose of resolving the statute of limitations questions. Based upon these stipulations, it appears debtor's business consisted of a working dairy. A petition for relief under Chapter 11 was originally filed on December 9, 1983. The individual defendant, Bookout, is the President of the debtor corporation. Business operations were carried on by the debtor in possession until February 18, 1986, when Plaintiff was appointed as Trustee of the bankruptcy estate. The Trustee apparently encountered some difficulty in gaining the debtor's cooperation in turning over property of the estate and, on May 6, 1986, secured a writ of assistance from this court allowing it to enlist the Marshall's services in obtaining possession of the estate's property.

On May 5, 1986, Bookout transported approximately 78 head of dairy cattle to the Topeka Livestock Auction for sale. The trustee claims these cattle were property of the estate. They were delivered to Topeka under the assumed name of Crestview Farms and sold on its behalf on May 6, 1986 for $40,416.40. The Trustee learned of this sale on May 20, 1986. By a letter dated May 22, 1986, the Trustee formally advised Topeka of its potential claim to the sale proceeds.

Prior to this time, Superblend had initiated litigation in the LaGrange Circuit Court against Bookout personally. On April 10, 1986, it obtained a judgment against him in the sum of $49,907.10. In attempting to collect this judgment, on May 15, 1986, Superblend filed proceedings supplemental which named Topeka as a garnishee-defendant. In response to garnishment interrogatories, Topeka informed the Circuit Court that it was holding the sale proceeds and that the Trustee had asserted a claim to the funds on behalf of the estate. Based upon this information, the Circuit Court entered an order restraining Topeka from disbursing the funds. No further action with regard to this money took place until August 13, 1987, when Superblend sought and obtained an order from the Circuit Court directing Topeka to turn the funds over to it.

The complaint in this adversary proceeding was filed on Monday, May 16, 1988. It seeks to recover judgment against Superblend and/or Bookout based upon the sale and disposition of the cattle and the ultimate distribution of the sale proceeds to Superblend. Both Defendants are claimed to have converted property of the estate, under Indiana law, for which the Trustee seeks treble damages and attorney fees. The complaint is also founded upon rights the Trustee is given by various provisions of the Bankruptcy Code. As to Superblend, the Trustee claims that its interest in the sale proceeds arises out of an unauthorized post petition transaction, which may be avoided pursuant to § 549. Additionally, the complaint also claims that Superblend's actions constitute a violation of the automatic stay for which appropriate damages are sought, either in general or pursuant to § 362(h). As to Bookout, the complaint seeks to avoid the claimed conversion of property of the estate, pursuant to § 549, as an unauthorized post petition transfer. It also alleges that Bookout, despite the Trustee's demand and the court's writ of assistance, failed to turn over property of the estate which was in his possession.

The sole issue before the court is whether any or all of the Trustee's claims are barred by the applicable statute of limitations. Given the status of this case, we must apply a summary judgment standard to the issues raised. Accordingly, even though the facts are undisputed, if conflicting inferences can legitimately be drawn from these facts, the motions to dismiss must be denied.

There is no real dispute as to which limitations may be applicable. Instead, the question is when they began to run and if they were tolled for any reason. Both the state law conversion claims and the claims under § 549 are subject to a two year statute of limitations. Section § 549 requires that any action to avoid an unauthorized post petition transfer must be brought within "two years after the date of the transfer sought to be avoided." 11 U.S.C. § 549(d)(1). Under Indiana Law, an action to recover for conversion must also be brought within two years. I.C. 34-1-2-2(a); *French v. Hickman Moving & Storage*, 400 N.E.2d 1384, 1388 (Ind.App.1980). Both limitations may be tolled or the party claiming their protection may be estopped from raising them based on its conduct.

Indiana has codified the traditionally equitable doctrine that one who conceals his liability from another may not raise the statute of limitations as a defense to the claim. *See* I.C. 34-1-2-9. It is founded on the concept

> that one who by deception or any violation of duty towards the plaintiff, conceals material facts and thereby prevents the discovery of the wrong, should not be permitted to take advantage of his own deceit or concealment by asserting the statute of limitations. *Colbert v. Waitt*, 445 N.E.2d 1000, 1002 (Ind.App.1982).

The doctrine does not represent an exception to the statute but, rather, operates as an equitable estoppel. *Weinstock v. Ott*, 444 N.E.2d 1227, 1236 (Ind.App.1983).

The operation of this doctrine depends primarily upon the conduct of the defendant. Mere ignorance or a lack of knowledge on the part of the plaintiff is not sufficient to constitute concealment. *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind.App.1987); *Forth v. Forth*, 409 N.E.2d 641, 645 (Ind.App.1980). Instead, concealment generally requires some type of active and intentional conduct. *Ludwig v. Ford Motor Co., supra*, 510 N.E.2d at 697; *Lambert v. Stark*, 484 N.E.2d 630, 632 (Ind.App.1985); *Forth v. Forth, supra*, 409 N.E.2d at 644. These affirmative acts

> must have been employed to prevent inquiry or elude investigation, or calculated to mislead and hinder the plaintiff from obtaining information, by the use of ordinary diligence, that a right of action exists. *French v. Hickman Moving & Storage, supra*, 400 N.E.2d at 1389. *See also Ludwig v. Ford Motor Co., supra*, 510 N.E.2d at 697; *Colbert v. Waitt, supra*, 445 N.E.2d at 1003; *Forth v. Forth, supra*, 409 N.E.2d at 645.

"There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Wood v. Carpenter*, 101 U.S. 135, 143, 25 L.Ed. 807, 809 (1879).

When the actions claimed to constitute concealment occur is not necessarily determinative. While they may normally be expected to be concurrent with or subsequent to the acts giving rise to the claim, this is not required, neither will it always be the case. So long as there is a relationship between the design and the consummation, concealment may precede the wrong and assist in its perpetration. *Wood v. Carpenter, supra*, 101 U.S. at 143.

There is one exception to the general principle that concealment requires affirmative action. In limited circumstances it may be found in passive conduct. Silence on the part of the defendant may constitute concealment where there is a duty to speak and disclose material information. *Ludwig v. Ford Motor Co., supra*, 510 N.E.2d at 697-98; *Lambert v. Stark, supra*, 484 N.E.2d at 632; *Colbert v. Waitt, supra*, 445 N.E.2d at 1003; *Forth v. Forth, supra*, 409 N.E.2d at 644-45.

Concealment is not entirely dependent upon defendant's conduct. The law imposes a duty upon the plaintiff to protect its own interests, notwithstanding a defendant's efforts to undermine them. Conse-

quently, in addition to proving defendant's attempts to conceal the claim, a plaintiff must also prove that it was reasonably diligent in its efforts to discover the wrong inflicted upon it. *See Wood v. Carpenter, supra,* 101 U.S. at 143; *Ludwig v. Ford Motor Co., supra,* 510 N.E.2d at 697–98; *Lambert v. Stark, supra,* 484 N.E.2d at 632; *Whitehouse v. Quinn,* 443 N.E.2d 332, 339 (Ind.App.1982).

The same principles of estoppel are also embodied in federal law, where a federal statute of limitations prescribes the time within which a claim must be brought. In addressing a two year statute of limitations contained in the Bankruptcy Act of 1867, the Supreme Court observed:

> [I]n suits in equity, the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.
>
> \*    \*    \*    \*    \*    \*
>
> To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the Statute of Limitations to protect it, is to make the law which was designed to prevent fraud, the means by which it is made successful and secure. And we see no reason why the principle should not be as applicable to suits tried on the common law side of the court's calendar as to those on the equity side.
>
> [W]e hold that when there has been no negligence or laches on the part of the plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to the party suing, or those in privity with him. *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 348–51, 22 L.Ed. 636, 638–39 (1875) (citations omitted).

This doctrine is now "read into every federal statute of limitations." *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946).

█ *Bailey v. Glover* is considered the seminal case concerning the principle that fraudulent concealment of a claim will toll the statute of limitations. The doctrine is not limited to claims based strictly upon fraud. *See Allis–Chalmers Mfg. Co. v. Commonwealth Edison Co.,* 315 F.2d 558 (7th Cir.1963). Furthermore, the rationale which supports the proposition, that the conduct of defendant may estop it from claiming the statute as a bar, has broadened the doctrine to also include conduct other than active concealment. *See Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *Smith v. Mark Twain Nat. Bank,* 805 F.2d 278 (8th Cir.1986).

█ Under the previous Bankruptcy Act, this doctrine of estoppel has been applied to toll the statute of limitations not only with regard to fraudulent transfers, as in *Bailey, see, In re Friedman,* 15 B.R. 493 (Bankr.N.D.Ill.1981), but also as to actions for the recovery of preferential transfers. *See Matter of Beechwood Medicenter of Flint,* 23 B.R. 939 (Bankr.E.D.Mich.1982). Under the current Bankruptcy Code, concealment is recognized as applying to the statute of limitations of § 546. *In re Butcher,* 72 B.R. 247, 250 (Bankr.E.D. Tenn.1987); *In re Metzeler,* 66 B.R. 977, 981 (Bankr.S.D.N.Y.1986). The statute of limitations contained in § 549 may also be tolled based on principles of estoppel. *Smith v. Mark Twain Nat. Bank, supra,* 805 F.2d at 293–94. Accordingly, we conclude that the statute of limitations of § 549 may be tolled where the post-petition transfers the trustee seeks to avoid have been concealed. The statute will not begin to run until they have been discovered, or, through reasonable diligence, should have been discovered.

█ The Trustee's action against Bookout was admittedly filed more than two

years after Bookout allegedly absconded with and sold cattle belonging to the bankruptcy estate. Nonetheless, the undisputed facts are clearly susceptible to the conclusion that Bookout attempted to conceal his actions from the Trustee and that the Trustee was reasonably diligent in its efforts of discovery.

The debtor, through its officers, was apparently sufficiently reluctant to fulfill its obligation to surrender property of the estate to the Trustee that the Trustee was compelled to seek and the court to grant a writ of assistance for this purpose. Bookout removed the cattle the day before the writ was issued and sold them under an assumed name on the very day the Trustee obtained it. Having gone to the rather extraordinary step of enlisting the Marshall's assistance in collecting property of the estate, the Trustee may be considered to have been diligently pursuing its obligations. The delay between the date of Bookout's actions and the date the Trustee learned of them was relatively brief, given the efforts taken to conceal them. Furthermore, as an officer of the debtor corporation, Bookout had an affirmative duty to cooperate with and disclose to the Trustee information concerning assets of the bankruptcy estate. *See* 11 U.S.C. § 521. Since these conclusions can be reasonably and legitimately inferred from the undisputed facts, Bookout's motion must be denied. These issues can only be resolved following the complete presentation of evidence at trial.

The Trustee's action against Superblend is not barred by the applicable statute of limitations, whether state or federal. We need not consider questions of tolling or estoppel in reaching this conclusion. The action was brought within two years of the transfer alleged in the complaint.

A petition for relief under Title 11 creates an estate. This estate essentially consists of all property in which the debtor has an interest, regardless of where it may be located or who may have possession of it. 11 U.S.C. § 541(a)(1). It encompasses both the property existing on the date of the petition and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). Additionally, the estate also includes the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate ..." 11 U.S.C. § 541(a)(6). The decisions addressing what is and what becomes property of the estate are in universal agreement that these concepts are broadly interpreted.

As used in § 541, "the term 'proceeds' ... is not intended in a confining sense.... Rather it is intended to be a broad term which will encompass all proceeds of estate property." 4 Collier on Bankruptcy para. 541.19, at 541–104. *See also In re Bernheim*, 62 B.R. 739, 744 (Bankr.D.N.J.1986). Furthermore, "the conversion in form of property of the estate does not change its character as property of the estate." *Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512, 515 (2nd Cir.1985).

The cattle in question did not cease to be property of the estate when Bookout absconded with them. The estate's interest in them continued unabated. When they were sold at Topeka, the cash proceeds did not become Bookout's personal funds, despite his efforts at deception and concealment. The money received upon sale represented proceeds of property of the estate and it became property of the estate—regardless of where it was located or who may have had possession of it. 11 U.S.C. § 541(a)(7).

When Superblend initiated garnishment proceedings in the LaGrange Circuit Court against Topeka it was not proceeding against Bookout's property. The money it sought was property of the bankruptcy estate. When it eventually obtained an interest in those funds, it obtained an interest in property of the bankruptcy estate.

Where Superblend is concerned, the transfer the Trustee seeks to avoid is not Bookout's conversion of the cattle or their later sale. Instead, the Trustee seeks to avoid the transfer that resulted from Superblend's initiation of garnishment proceedings which culminated in the payment of the sale proceeds to it. The earliest possible date for this transfer was May 15,

**432**

1986, when the garnishment proceedings were commenced. Since the Trustee's complaint was filed on Monday May 16, 1988, it was filed within two years of the transfer sought to be avoided. As such, it is not barred by 549(d)(1).

Superblend's argument that the Trustee's state law claim for conversion is barred by the statute of limitations must also fail. Its actions, which are alleged to constitute conversion, took place on or after May 15, 1986. It may not rely on Bookout's previous act of conversion to establish an earlier date for its own wrongdoing. Even if it could do so, Superblend would also have to accept the estoppel which flows from Bookout's concealment of those actions.

The Trustee's complaint contains two other claims—the claim against Superblend for violation of the automatic stay and the turnover claim against Bookout. Both claims are founded upon specific duties imposed by the Bankruptcy Code and neither can exist outside of a bankruptcy context.

Although Congress specifically limited the time within which certain rights given by the Code must be exercised, it did not impose a statute of limitations with regard to actions under § 542 or for violation of the stay of § 362. "Policies underlying the creation of federal equitable claims are not well served by applying rigid limitations; therefore, federal courts considering federal equitable claims should rely on equitable principles." *Erkins v. Bryan*, 785 F.2d 1538, 1543 (11th Cir.1986). *See also Holmberg v. Armbrecht, supra,* 327 U.S. at 395, 66 S.Ct. at 584. Such actions "simply are not subject to a statute of limitations." *Electronics Relays (India) Pvt. Ltd. v. Pascente,* 610 F.Supp. 648, 655 (N.D.Ill. 1985). They are, however, subject to the defense of laches. *Cannon v. Univ. Of Health Sciences/The Chic. Med.,* 710 F.2d 351 (7th Cir.1983); *Electronics Relays (India) Pvt. Ltd. v. Pascente, supra,* 610 F.Supp at 655.

Historically, turnover actions have never been viewed as being restricted by a statute of limitations, especially when brought against the debtor. *See Berman v. Pro-*vencher, 614 F.2d 823, 825 (1st Cir.1980). Even when the action is brought against a third party, no statute of limitations is recognized, although the doctrine of laches may provide a defense. *See In re De Berry,* 59 B.R. 891, 898–99 (Bankr.E.D.N.Y. 1986). The same principle—no statute of limitations but laches as a potential defense—has also been applied to actions for violation of the stay. *See In re Elliott,* 81 B.R. 460, 463–64 (Bankr.N.D.Ill.1987).

The facts contained in the parties' stipulations are not sufficient to establish a defense of laches. The motions to dismiss these two claims will therefore be denied.

One other argument raised by the Defendants needs to be addressed. Both Defendants attempt to place the responsibility for this whole tangled mess upon the Trustee. They suggest that had it only succeeded in taking possession of the cattle before May 5, 1986, Bookout would not have been able to make off with them and sell them and Superblend would never have been able to garnish the proceeds. Any failure of the Trustee to fulfill its obligations under Code cannot relieve the Defendants of the duty to fulfill their own. *In re Bidlofsky,* 57 B.R. 883, 896 (Bankr.E. D.Mich.1985).

Defendants' motions to dismiss Plaintiff's complaint are denied.