**In re George A. FAN and Joanna Z. Fan, Debtors.**

**Wyman W. C. LAI, Trustee of the Estate of George A. Fan and Joanna Z. Fan, Plaintiffs,**

v.

**Gerald ZANE, Defendant.**

**Bankruptcy No. 85–00424.**
**Adv. No. 90–0097.**

United States Bankruptcy Court, D.Hawaii.

Sept. 24, 1991.

---

Susan Tius, Honolulu, Hawaii, for trustee.

Sharon Shanley, Honolulu, Hawaii, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFF'S COUNTER MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JON J. CHINEN, Bankruptcy Judge.

On April 16, 1991, Defendant Gerald Zane filed a Motion for Summary Judgment in this adversary case. On June 12, 1991, Plaintiff Wyman W.C. Lai, Trustee of the Estate of George A. Fan and Joanna Z. Fan, filed a Counter–Motion for Summary Judgment. A hearing on both Motions was held on June 28, 1991 before the undersigned Judge. Thereafter, on July 18, 1991, the Court issued its oral ruling.

The Court, having reviewed the motions and memoranda, having heard oral argument of counsel and, having reviewed the records and files in this action, now makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. When Debtors filed their voluntary petition for bankruptcy under chapter 11 of the Bankruptcy Code on September 11, 1985, Debtor George Fan ("Debtor G. Fan") owned a 25% interest in the fee simple property underlying the Matlock Hale Condominium ("Property"). This 25% interest in the Property was not listed in the Statement of Affairs of Debtors and Debtors-in-Possession Engaged in Business, or the two amendments and supplement to the Statement filed by the Debtors.

2. On October 5, 1987, the Chapter 11 case was converted to Chapter 7 of the Bankruptcy Code. The Debtors' Final Report and Account did not mention that during the Chapter 11 proceedings, Debtor G. Fan's 25% interest in the Property was transferred to Defendant Gerald Zane ("Zane").

3. After conversion to Chapter 7, Plaintiff Trustee Wyman Lai ("Trustee"), his attorney, Susan Tius ("Tius"), and his CPA Michelle Tucker, tried to obtain financial and other information concerning the Estate and its assets and liabilities. However, they received no cooperation from the Debtors or from the Debtors' accountant.

4. On February 13, 1989, the Trustee filed an Ex Parte Motion for an Order directing the Debtors to cooperate with the Trustee in preparing fiduciary tax returns, which Motion was granted by Order dated February 15, 1989. On February 16, 1989, Tius sent a copy of the February 15, 1989 Order to Thomas Wong, Esq., who was then the attorney for the Debtors, requesting financial and tax information sought by the Trustee's CPA.

5. On March 3, 1989, Mr. Wong sent Tius a list of certain property that had been transferred during the Chapter 11 proceedings. However, the list did not include the transfer of the 25% interest of Debtor G. Fan to Zane.

6. Despite the February 15, 1989 Order, the Debtors and their tax accountant did not provide complete tax returns, including the K–1 schedules, to the Trustee, his attorney, or his CPA.

7. On May 11, 1989, Tius wrote to Jeffrey C. Wilk, Esq., who succeeded Mr. Wong as counsel for the Debtors, requesting information specifically concerning the Matlock Properties partnership, but the requested information was never received.

8. Because of failure on the part of Debtors, their attorneys, and their account-

ants to cooperate, the Trustee filed a Motion to Dismiss the bankruptcy case on February 1, 1989. The Court denied the motion and ruled that the Trustee should attempt to complete the case.

9. On August 8, 1990, after about 300 hours of work, the Internal Revenue Service ("IRS") informed Tius about a possible fraudulent transfer of property to Zane for less than market value. Tius attempted to question Zane and demanded return of the property and proceeds received from the property. Tius received no response to her demand. Therefore, on October 22, 1990, the Trustee filed the instant Complaint.

10. Zane is the brother of Debtor Joanna Fan and the brother-in-law of Debtor G. Fan. During the Chapter 11 proceedings while the Debtor was in possession, Debtor G. Fan filed an application to transfer his 25% interest in the Property to Zane. The Application states that Zane would purchase the Property by way of a payment of $10,500.00 and an offset of an alleged debt of $68,000.00. The Application provided an opportunity for a hearing, but no hearing was held.

11. This Court finds that the Application was deceptive. The Application did not mention that Zane was Debtor G. Fan's brother-in-law and that the transfer was of a 25% interest in real property. The Application failed to disclose that the property interest had a fair market value of approximately $157,000.00. And, the Application failed to state that the $68,000.00 was to offset a pre-petition debt.

12. The Court did not authorize the transfer to Zane for less than market value. The true facts were concealed and the Court could not authorize what was not disclosed. In addition, the Debtors failed to furnish information to the Trustee in an effort to protect their relative, Zane. Since Zane is a merchant marine, he was often away from Hawaii and could not be readily examined by the Trustee.

13. To the extent that these Findings of Fact constitute Conclusions of Law, they shall be so deemed.

## CONCLUSIONS OF LAW

1. This action was brought under 11 U.S.C. Section 549 to avoid a post-petition transfer. Although 11 U.S.C. § 549(d) contains a two-year statute of limitations, under certain circumstances the statute may be tolled where inequitable conduct exists. In this case, the creditors and the Court were deceived by the Application. Had the Court and the creditors known that the transfer to Zane involved a transfer to a relative at far less than fair market value, with an offset for an alleged prepetition debt, the Court and the creditors would not have approved the transfer. To protect their relative Zane, the Debtors failed to provide the Trustee with the proper information, and the Court will not condone such action.

2. Under appropriate circumstances, the statute of limitations may be tolled by the inequitable conduct of the parties. *See Smith v. Mark Twain National Bank*, 805 F.2d 278 (8th Cir.1986). In this case, the true nature of the transfer was hidden. Although, in general, inequitable conduct requires some type of active and intentional misconduct, in certain circumstances, inequitable conduct may be found in passive conduct. As noted in *In re Bookout Holsteins, Inc.*, 100 B.R. 427, 429 (Bkrtcy.N.D.Ind.1989):

> Silence on the part of the defendant may constitute concealment where there is a duty to speak and disclose material information. (Citations omitted).

3. And, as noted in *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875):

> [I]n suits in equity, the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.

> \* \* \* \* \* \*

> To hold that by concealing a fraud, or by committing a fraud in a manner that it

concealed itself until such time as the party committing the fraud could plead the Statute of Limitations to protect it, is to make the law which was designed to prevent fraud, the means by which it is made successful and secure. And we see no reason why the principle should not be as applicable to suits tried on the common law side of the court's calendar as to those on the equity side.

[W]e hold that when there has no negligence or laches on the part of the plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not being to run until the fraud is discovered by, or becomes known to the party suing, or those in privity with him....

4. There is broad discretion in this Court in applying 11 U.S.C. § 549. *See e.g. In re Photo Promotion Associates, Inc.,* 881 F.2d 6 (2nd Cir.1989). The Court concludes that the transfer to Zane was not authorized because of the failure to disclose material facts in the Application noticed to all creditors.

5. To the extent that these Conclusions of Law constitute Findings of Fact, they shall be so deemed. A judgment shall be issued forthwith.

## JUDGMENT

Pursuant to the Findings of Fact and Conclusions of Law in the above-entitled case(s),

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Counter–Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied.

IT IS FURTHER ORDERED that Gerald Zane transfer to the Trustee immediately the 25% interest in the fee simple interest underlying the Matlock Hale Condominium and execute all necessary documents to effect the transfer of the 25% interest in said real property to the Trustee and turn over to the Trustee any and all proceeds received by Defendant Gerald Zane based on said 25% interest.

IT IS FURTHER ORDERED that the Clerk of the United States Bankruptcy Court for the District of Hawaii is authorized to execute on Defendant Zane's behalf, all necessary documents to effect the transfer of Defendant Zane's 25% interest in the said real property to the Trustee.