Rodney H. LUDWIG,
Plaintiff-Appellant,

v.

FORD MOTOR COMPANY, General Motors Corporation and Fairway Ford Sales, Inc., Defendants-Appellees.

No. 30A01–8607–CV–00175.

Court of Appeals of Indiana,
First District.

July 9, 1987.
Rehearing Denied Aug. 25, 1987.

Edward B. Hopper, II, James S. Kowalik, Hopper & Opperman, Indianapolis, Michael J. Tosick, Free Brand Tosick & Allen, Greenfield, for plaintiff-appellant.

W.C. Blanton, Ice Miller Donadio & Ryan, Indianapolis, for defendant-appellee Ford Motor Co.

Michael Rosiello, Stanley C. Fickle, Paula Taylor Whitfield, Barnes & Thornburg, Indianapolis, for defendant-appellee General Motors Corp.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Rodney H. Ludwig appeals the granting of summary judgment in favor of Ford Motor Company and General Motors Corporation. We affirm.

## FACTS

Rodney H. Ludwig is president and principal shareholder of R.H. Ludwig Co., an over-the-road trucking company. In the spring of 1979, Ludwig met with Philip Weisman, president of Fairway Ford, Inc. (Fairway Ford), a Ford dealership that includes tractor-trailers among the vehicles it sells, about purchasing some trucks. Weisman apparently told Ludwig that the five trucks he was considering purchasing were Fairway Ford demonstration models with 200,000 mile warranties, instead of telling Ludwig the trucks had been used previously in Weisman's business. The trucks ranged in mileage from 5,000 to 29,000 with an average mileage of approximately 15,000 miles per truck. Ludwig purchased five Ford CLT 9000 trucks, with General Motors Corp. (GM) engines, from Fairway Ford, the first two trucks being delivered on May 23, 1979, and the remaining three delivered to Ludwig on May 29, 1979.

From the start, the trucks consumed inordinate amounts of fuel and suffered repeated mechanical breakdowns. According to Ludwig, an engineer, the breakdowns were due to various defects in the GM engines and Ford bodies. Ludwig claims the Ford trucks had frame flexing and alignment problems which caused the GM engines to require extra power and con-

sume excessive amounts of fuel. There also was excessive wear on the tires, all of these problems leading to the eventual breakdown of all five engines which essentially blew up over a seven month period leaving the trucks inoperable. Two of the five engines were repaired by GM but blew up again later.

According to Ludwig, when the engines began blowing up he met with Weisman on several occasions and was assured by Weisman, Ford and GM that the situation would be resolved. Ludwig also discovered that other owners had similar frame and fuel consumption problems. Further repairs on the five trucks were not made by Ford or GM as they were no longer under warranty. Since they were not repaired Ludwig refused to make further payments on the trucks; there were no payments made from January of 1979 to January of 1980. Because the five trucks were inoperative, Ludwig lost all of his trucking business. The trucks were repossessed and Ludwig was forced out of the trucking business.

On August 10, 1983, Ludwig brought suit against Ford, GM, and Fairway Ford for $1,500,000.00 in compensatory damages and $500,000.00 in punitive damages. Ludwig based his complaint on alleged breaches of express and implied warranties and negligent design and construction with respect to the five trucks. Ludwig also alleged fraudulent concealment on the part of Detroit Diesel Allison, a division of GM, regarding the manufacture of the engines.

On March 22 and 23, 1986, the trial court granted Ford's and GM's motions for summary judgment respectively. In its findings of fact and conclusions of law pursuant to Ford's summary judgment motion the trial court found that the relationship between Ford and Fairway Ford with respect to trucks was set forth in a heavy truck sales service agreement. Under the terms of this agreement, Fairway Ford had the right to purchase heavy duty trucks manufactured by Ford and re-sell them to Fairway Ford customers on its own behalf. Thus, Fairway Ford was not Ford's agent for the purpose of selling trucks. Further-

more, no Ford employee participated in the negotiations which led to Ludwig's purchase of the trucks, or otherwise had any dealings with Ludwig relating to the trucks prior to their purchase. The court found that the only warranty made by Ford included the following language:

"To the extent allowed by law, THIS WARRANTY IS IN PLACE OF all other warranties, express or implied, including ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS. Under this warranty, repair or replacement of parts is the only remedy.

. . . . .

"Cummins, Caterpillar, Detroit Diesel Engines, and Allison Transmissions installed in Ford-built trucks are warranted by their respective manufacturers and not by Ford or the Selling Dealer...."

Record at 522. The court found that Ford promised only that it would repair or replace certain parts of trucks found to be defective in factory material or workmanship and did not warrant the absence of defects. Thus, the court concluded that Ford's warranty does not relate to future performance. The court further found that Ludwig had not alleged personal injury or property damage as proximately caused by any alleged defects.

In its conclusions of law regarding Ford's motion for summary judgment the court determined that the four year statute of limitations, Indiana Code section 26–1–2–725, barred all of Ludwig's claims of breach of express and implied warranties against Ford because the action was commenced more than four years after the trucks were delivered to Ludwig. Neither, the court concluded, did Ford's warranty fall within the future performance exception found in I.C. § 26–1–2–725(2). The court found that Ludwig's claim of breach of an implied warranty failed to state a claim because no privity of contract existed between Ludwig and Ford with respect to Ludwig's purchase of the trucks. In addition, Ford effectively disclaimed all implied warranties. Ludwig's claim for breach of an implied warranty of fitness for a particular purpose was also found to fail to state

a claim as a matter of law because the trucks were used for their ordinary purpose. Finally, the court concluded that Ludwig's claim of negligent design and construction failed to state a claim in that such claims are not legally cognizable in Indiana. Therefore, the trial court granted Ford's motion for summary judgment.

The court made additional findings of fact regarding GM's motion for summary judgment. GM warranted only the engines contained in the trucks, the warranty stating:

"Detroit Diesel Allison (Detroit Diesel Allison, Division of General Motors Corporation) warrants to the owner that it will repair any defective or malfunctioning parts of each new Series 71 and 92 Detroit Diesel engine (referred to as Engine) used to power a motor vehicle operated on highway . . . in accordance with the following schedule:

WARRANTY LIMITATIONS AND ADJUSTMENT SCHEDULE

| Warranty Limitations (Whichever Occurs First) | | Adjustment Charge to Be Paid by Owner | |
|---|---|---|---|
| Item | Months | Miles | Parts | Labor |
| Engine | Up to 24 | Up to 200,000 | No Charge | No Charge |
| Optional Equipment | Up to 24 | Up to 50,000 | No Charge | No Charge |

The warranty periods shall begin on the date the engine is delivered to the first retail purchaser or, if the engine is first placed in service as a demonstrator prior to sale at retail, on the date the engine is first placed in service.

. . . .

THIS WARRANTY IS THE ONLY WARRANTY APPLICABLE TO DETROIT DIESEL ENGINES AND ENGINE OPTIONAL EQUIPMENT AND IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. DETROIT DIESEL ALLISON DOES NOT AUTHORIZE ANY PERSON TO CREATE FOR IT ANY OTHER OBLIGATION OR LIABILITY IN CONNECTION WITH THESE ENGINES OR OPTIONAL EQUIPMENT. DETROIT DIESEL ALLISON SHALL NOT BE LIABLE FOR CONSEQUENTIAL DAMAGES RESULTING FROM BREACH OF WARRANTY."

Further, no GM employee participated in negotiations for the purchase. Finally, Ludwig did not claim any personal injury or property damage due to the defects in the GM engine. Since Ludwig sought to recover for alleged breaches of express and implied warranties concerning the sale of goods, the court found the action subject to the Uniform Commercial Code. Thus, the court concluded that the four year statute of repose, I.C. § 26–1–2–725, applied and barred Ludwig's claim for breaches of express and implied warranties against GM, and further that the warranty did not fall within the future performance exception,

I.C. § 26–1–2–725(2), of the statute. The court determined that GM promised only that it would repair any defective or malfunctioning parts on the engine within the warranty period and did not promise an absence of defects. Thus, the court opined, the warranty was one of remedy and not future performance. The court determined that Ludwig's claim of alleged fraudulent concealment was flawed as there was no evidence GM made affirmative acts of concealment and no fiduciary or confidential relationship between GM and Ludwig giving rise to a duty to disclose information. Further, Ludwig's claim of breach of implied warranties was insufficient as a matter of law because there was no privity of contract between Ludwig and GM and GM's warranty had correctly and effectively disclaimed all implied warranties pursuant to I.C. § 26–1–2–316. In addition, Ludwig's claim of negligence failed as a matter of law because a negligence theory does not allow recovery in the absence of personal injury or property damage in the context of products liability. Therefore, the trial court granted GM's motion for summary judgment. Thereafter, Ludwig perfected this appeal.

### ISSUES

Ludwig presents six issues for review which we have rephrased and subsumed into the following:

1. Whether the trial court erred in finding that Ludwig's claims against Ford and GM for breach of express and implied warranties were barred by the statute of limitations, I.C. § 26–1–2–725.

 a. Whether the statute of limitations was tolled by the doctrine of Equitable Estoppel.

 b. Whether the statute of limitations was tolled by fraudulent concealment on the part of Ford and GM.

 c. Whether the statute of limitations was tolled by GM's efforts to repair under warranty.

2. Whether the trial court acted properly and within its discretion in ruling on Ford's and GM's motions for summary judgment before requiring Ford and GM to respond to Ludwig's discovery requests.

### DISCUSSION AND DECISION

 At the outset, we note that Ford initially argues that this court lacks jurisdiction to entertain this appeal because Ludwig failed to file a motion to correct error within sixty days after the trial court entered judgment. According to the record, the trial court entered judgment for Ford on March 22, 1986, sixty-one days prior to the filing of Ludwig's motion to correct errors. March 22, 1986, was a Saturday. Indiana Rules of Procedure, Trial Rule 72(D) provides that "[i]mmediately upon the entry of a ruling upon a motion, an order or judgment the clerk shall serve a notice of the entry by mail...." However, Indiana Rules of Procedure, Trial Rule 72(C) provides that the clerk's office "shall be open during business hours on all days except Saturdays, Sundays, and legal holidays...." Thus, the earliest that notice could have been entered by the clerk would have been Monday the 24th, putting Ludwig's motion to correct errors within the sixty day time limitation of Ind. Rules of Procedure, Trial Rule 59(C).

Ludwig appeals from the trial court's grant of summary judgment in favor of Ford and GM. Summary judgment is properly granted in cases where there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Kidd v. Davis* (1985), Ind.App., 485 N.E.2d 156, 158; *Nahmias v. Trustees of Indiana University* (1983), Ind.App., 444 N.E.2d 1204, 1206, *trans. denied; English Coal Co., Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302, 307, *trans. denied.* In considering a motion for summary judgment the trial court may consider any evidence that may be properly admitted during the trial. *Moll v. South Central Solar Systems* (1981), Ind.App., 419 N.E.2d 154. To determine if a genuine issue of material fact exists all materials on file are construed liberally in favor of the nonmoving party and all doubts are resolved against the moving party. *Moll.* Initially, the burden lies with the movant to establish that no genuine issues of material fact exist. *Pow-*

*ell v. Dawson* (1984), Ind.App., 469 N.E.2d 1179, 1181; *Adams v. Luros* (1980), Ind. App., 406 N.E.2d 1199, 1203. However, in a summary judgment proceeding in which the movant raises an affirmative defense based on the statute of limitations, he need only make a *prima facie* showing that the cause of action was commenced beyond the statutory period. *Conard v. Waugh* (1985), Ind.App., 474 N.E.2d 130, 134. The burden then falls on the opponent of the motion to establish "... the existence of material facts *in avoidance* of the statute of limitations defense ..." (emphasis in original). On appeal, we employ the same standard of review utilized by the trial court in examining its granting of summary judgment. *Wingenroth v. American States Insurance Co.* (1983), Ind.App., 455 N.E.2d 968, 969.

*Issue One*

█ Ludwig asserts that the trial court erred in holding that his claims against Ford and GM for breach of express and implied warranties were barred by the statute of limitations. Ludwig's claims are governed by Article 2 of the Uniform Commercial Code, Ind. Code section 26–1–1–101 *et seq.*, and therefore, by its limitation provisions. Indiana Code section 26–1–2–725 contains a four-year statute of repose for breach of warranty actions which states in pertinent part:

"(1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year, but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered."

Thus, an action for breach of warranty must be commenced within four years after tender of delivery. *Ferdinand Furniture Co., Inc. v. R.M. Anderson* (1980), Ind. App., 399 N.E.2d 799, 802. The first two trucks were delivered to Ludwig on May 23, 1979, and the remaining three trucks were delivered on May 29, 1979. Ludwig commenced this action against Ford and GM on August 10, 1983. Ludwig did not file his complaint within the required four year period and his action for breach of implied warranties is, therefore, barred by the statute of limitations.

Ludwig argues, however, that the statute of limitations was tolled under three separate legal theories: (1) equitable estoppel; (2) fraudulent concealment; and (3) promises to repair.

a) Equitable Estoppel.

█ Ludwig first argues that the statute of limitations was tolled under the doctrine of equitable estoppel. Ludwig bases this argument on alleged representations made by Ford and GM that the engines would be repaired. However, Ludwig did not raise this equitable estoppel argument in his motion to correct errors, or in his complaint, or at trial. Issues not presented in a motion to correct errors are not preserved for consideration on appeal. *In re Estate of Williams* (1980), Ind.App., 398 N.E.2d 1368, 1371, *trans. denied;* Ind. Rules of Procedure, Trial Rule 59. Moreover, Ludwig may not assert such a claim for the first time on appeal. *Allen v. Scherer* (1983), Ind.App., 452 N.E.2d 1031, 1033; *Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92, 95. This rule also applies to summary judgment proceedings. *Johnson v. Rutoskey* (1984), Ind.App., 472 N.E.2d 620, 623. Therefore, Ludwig has waived this issue on appeal.[1]

---

1. Additionally, Ludwig's claim that equitable estoppel would toll the running of the statute of limitations fails as a matter of law. Equitable estoppel is called into play when a false representation of material fact is made with actual or constructive knowledge of the true facts. "The representation must be made to one who is without knowledge or the reasonable means of knowing the true facts with the intent that it will be relied upon." *Whitaker v. St. Joseph's*

b) Fraudulent Concealment.

Second, Ludwig argues the statute of limitations was tolled by Ford and GM's fraudulent concealment from him of possible defects in the design of the Ford trucks and GM engines.[2] Ludwig premises this argument on his insistence that Ford and GM evaded his diligent search for the truth in discovering what caused the breakdown of his trucks by constantly assuring him that all of his problems would be resolved.

The law narrowly defines concealment. *Forth v. Forth* (1980), Ind.App., 409 N.E.2d 641, 644. Generally, the concealment must be active and intentional. *Lambert v. Stark* (1985), Ind.App., 484 N.E.2d 630, 632, *trans. denied; Forth,* at 644. Mere silence on the part of a defrauder will not constitute concealment absent a duty to speak. *Forth,* at 644–45. The failure to speak when there is a duty to disclose, via a fiduciary or confidential relationship, will toll the running of the statute of limitations. *Lambert,* at 632; *Forth,* at 645. However, the burden of showing a duty to speak is on the party alleging fraudulent concealment. *Barnd,* at 168. The affirmative acts of concealment must be calculated to mislead and hinder a plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation. *Forth,* at 645; *French v. Hickman Moving and Storage* (1980), Ind.App., 400 N.E.2d 1384, 1389. There must be some trick or contrivance intended by the defrauder to exclude suspicion and prevent inquiry. *Forth,* at 645.

Mere lack of knowledge is not enough to constitute concealment and toll the running of the statute. *Id.* Thus, to avoid the bar of limitations by claiming fraudulent concealment, a plaintiff must show that he used due diligence to detect the fraud. *Lambert,* at 632.

In the present case, there was no fraudulent concealment present which would toll the statute of limitations. Ludwig's testimony reveals that he knew in 1979 and early 1980 that there were problems with the trucks, that he felt the engines were not repaired by GM as allegedly warranted, and that he believed he had a claim against GM. Thus, there is no question as to whether GM or Ford concealed any facts from Ludwig demonstrating the existence of a possible cause of action for breach of warranty. On the contrary, Ludwig's own testimony reveals that he believed at the outset that the engines and trucks were defective.

Neither has Ludwig demonstrated any affirmative acts of concealment on the part of Ford and GM which would circumvent the lack of a fiduciary relationship and its inherent duty to disclose. When asked, during his deposition, what GM had allegedly concealed, Ludwig stated:

> "Well, I know for a fact that these engines had many problems before I even bought the trucks. And it was never revealed to me in any way that there was any problem with that engine.
>
> . . . .

*Hospital* (1981), Ind.App., 415 N.E.2d 737, 744–45. The other party then must rely upon such representation to his or her detriment. *Barnd v. Borst* (1982), Ind.App., 431 N.E.2d 161, 168, *trans. denied.* Ludwig claims the "repair representations" allegedly made before and during April of 1980 lulled him into abstaining from bringing suit within the limitations period. These alleged representations would have occurred more than 36 months before the limitations period ran and more than 39 months before Ludwig filed suit. The trucks were repossessed from Ludwig in May of 1980. Ludwig retained an attorney by May of 1980 to "investigate possible litigation." Record at 541. Given these facts, Ludwig could not establish that he relied on anything GM or Ford purportedly did in failing to bring this action before the limita-

tions period ran or that he exercised diligence in bringing his claim.

**2.** It must be noted that the trial court did not grant summary judgment on the negligent design claim on the basis of the limitations defense, but rather on the grounds that Ludwig failed to state a claim upon which relief could be granted under his theory of negligent design and/or manufacture under Indiana law. Ludwig has not appealed from this aspect of the judgment, and so it is no longer a part of the case. Moreover, negligent design and manufacture is not an element of a breach of warranty claim. Instead, the issue is whether the product performed as warranted. Thus, any claim by Ludwig regarding concealment of negligent design and manufacture is immaterial to his breach of warranty claims.

"[T]hrough the time that I had the trucks, I think they concealed all the problems they were having with the engines because they never did really admit anything. They knew they had the problems, but they didn't come out with it and try to make it open and get them resolved."

Record at 569, Deposition of Ludwig, Volume I, at 182. When asked for evidence of specific acts of concealment regarding the breakdowns Ludwig responded: "Well, no, I don't think they concealed anything, no.... By omission, by silence they concealed it." Record at 569, Deposition of Ludwig, Volume I, at 183. As previously noted, silence, absent a duty to speak, does not amount to fraudulent concealment or evidence the "affirmative acts" required to toll the limitations period under the doctrine of fraudulent concealment.

In addition, to sustain a claim of fraudulent concealment and toll the limitations period the law requires that Ludwig prove diligence in detecting the fraud. Ludwig filed suit more than thirty-nine months after the trucks were repossessed. This was long after GM made its last repairs on the engines or "repair representations" upon which Ludwig bases his argument, and more than thirty-nine months after Ludwig retained an attorney to investigate the possibility of litigation. In addition, Ludwig admitted part of the delay was due to a problem with his original attorney. Record at 541–42. Ludwig has failed to present any evidence demonstrating reasonable diligence on his part in pursuing this action. Thus, Ludwig has failed to demonstrate any fraudulent concealment that would toll the statute of limitations.

c) Promise to Repair.

Third, Ludwig argues Ford and GM's alleged promises and efforts to repair the trucks tolled the statute of limitations. Specifically, Ludwig argues GM's efforts to repair two of the engines tolled the limitations statute. Apparently, Indiana has not yet had the opportunity to rule on the issue of whether or not repair promises and efforts will toll the statute of limitations for breach of warranty cases. Some jurisdictions have found that repair promises or efforts will toll the statute of limitations. *E.g., Louisville Silo and Tank Co. v. Thweatt* (1927), 174 Ark. 437, 295 S.W. 710 (statute tolled so long as vendor insists defect can be repaired and is attempting to do so); *Southern California Enterprises, Inc. v. D.N. and E. Walter and Co.* (1947), 78 Cal.App.2d 750, 178 P.2d 785 (limitations statute applicable to breach of warranty action tolled while vendor claims defect can be cured and is attempting to do same); *Gaffney v. Unit Crane and Shovel Corp.* (1955), 49 Del. 381, 117 A.2d 237 (recognizing rule that statute is tolled where seller's promises rise to level of an assurance goods will be made to conform to warranty). However, other jurisdictions maintain that a seller's assurances that a chattel not in compliance with its warranty will be corrected, and his attempts to make such repairs, do not toll the statute of limitations applicable to an action for breach of warranty. *Triangle Underwriters, Inc. v. Honeywell, Inc.* (E.D.N.Y.1978), 457 F.Supp. 765, 771 (argument of tolling based on repair "has been rejected by the majority of jurisdictions"), *aff'd on this holding, rev'd on other grounds* (2d Cir.1979), 604 F.2d 737, 743 (attempts by seller to remedy defects giving rise to cause of action did not toll UCC's four year period of limitations). *See e.g., Hartford Mutual Ins. Co. v. Seibels, Bruce and Co.* (D.Md.1984), 579 F.Supp. 135, 138 (attempts to repair do not toll statute of limitations); *Ontario Hydro v. Zallea Systems, Inc.* (D.C.Del.1983), 569 F.Supp. 1261 (mere attempt by seller to remedy defects giving rise to cause of action does not toll statute of limitations); *Binkley Co. v. Teledyne Mid-America Corp.* (E.D.Mo.1971), 333 F.Supp. 1183, *aff'd* (8th Cir.1972), 460 F.2d 276 (seller's attempts to repair did not toll statute of limitations regarding express and implied warranties); *Tomes v. Chrysler Corp.* (1978), 60 Ill.App.3d 707, 18 Ill.Dec. 71, 377 N.E.2d 224 (efforts to repair do not toll the statute); *Smith v. Ford Motor Co.* (1978), 59 Ohio App.2d 41, 392 N.E.2d 1287 (mere attempt by seller to remedy defects giving rise to cause of action does not toll statute

of limitations); *Poppenheimer v. Bluff City Motor Homes* (1983), Tenn.App., 658 S.W.2d 106 (breach of warranty occurs upon tender of delivery and seller's attempts to cure defects do not toll statute of limitations); *Bishop-Babcock-Becker Co. v. Jennings* (1922), Tex.Civ.App., 245 S.W. 104 (statute of limitations not interrupted by seller's assurances or attempts to remedy defects). Thus, courts rejecting the view that a seller's repair attempts will toll the statute appear to place some reliance on the general rule [3] that courts will not read into statutes of limitation an exception which has not been embodied therein. Annot., 68 A.L.R.3d 1277 (1976); *Binkley Co. v. Teledyne Mid-America Corp.* (E.D.Mo. 1971), 333 F.Supp. 1183, *aff'd* (8th Cir. 1972), 460 F.2d 276.

 Under the present circumstances, we decline Ludwig's invitation to adopt the view that repair efforts toll the statute of limitations. Here, both Ford and GM provided explicit, written warranties. GM's engine warranty provided that it would repair any defective or malfunctioning part for a period of two years or 200,000 miles or 50,000 miles for engines and optional equipment respectively. The warranty further provided that it would begin running on the date the engine was delivered to the first retail purchaser, or if the engine was first placed in service as a demonstrator prior to sale at retail, then on the date the engine was first placed in such service. Ludwig was aware of this warranty when he took delivery of the trucks in May of 1979. The trucks immediately suffered mechanical problems. GM repaired two of the five engines while still under warranty. Ludwig claimed repair representations were made to him before and during April of 1980. This was over 36 months before the period of limitations ran and over 39 months before Ludwig filed suit. In addition, the last repair was made more than 39 months before Ludwig filed suit. Clearly, Ludwig cannot claim these repairs lulled him into inaction and delayed his filing of this suit.[4] The written warranty specifically provides repairs for two years but Ludwig seems to think this court should keep extending that period. Given the facts of this case and the legislature's specific language providing for a four year statute of limitations, this we will not do. The efforts to repair the engines did not toll the statute of limitations and, therefore, the trial court did not err in determining that the statute barred Ludwig's claim for breach of warranty.

*Issue Two*

 Ludwig argues the trial court erred in ruling on Ford's and GM's motions for summary judgment before requiring Ford and GM to respond to Ludwig's discovery requests. Specifically, Ludwig asserts that the requested discovery would have revealed evidence to develop a genuine issue of fact as to the questions of: fraud on the part of GM and Ford in terms of concealing information of defective engines and vehicle frames; the scope and nature of the representations made to Ludwig regarding express warranties; Ludwig's reliance on Ford's and GM's alleged representations of resolving his disputes; the question of agency; and any other matters establishing liability in this action. Thus, Ludwig asserts that granting the motions for summary judgment before requiring Ford and GM to respond to the discovery requests precluded him from presenting any material issues of fact. It

**3.** For further discussion of the rule see 51 Am. Jur.2d, *Limitation of Actions* § 138 (1970).

**4.** Moreover, even where a plaintiff sustained his burden of establishing circumstances sufficient to toll the statute of limitations, his lack of diligence in prosecuting the action, after cessation of such circumstances, might prevent him from relying thereon. It was held in *Fablok Mills, Inc. v. Cocker Machine and Foundry Co.* (1973), 125 N.J.Super. 251, 310 A.2d 491, that even assuming that the seller's attempts to repair certain machines did toll the statute of limitations for breach of warranty, the buyer's subsequent lack of diligence barred him from relying on such conduct as a defense to the statute. The court noted that the buyer's letter revoking its acceptance and requesting the seller to take back the machines and refund the purchase price was written 16 months before the expiration of the limitations period, but that instead of instituting suit within that period the buyer delayed for nearly 21 months.

is generally improper to grant summary judgment when requests for discovery are pending. *Roark v. City of Albany* (1984), Ind.App., 466 N.E.2d 62, 66. However, an exception arises when the pending discovery is unlikely to develop a genuine issue of material fact. *Id.*

In the present case, there was no genuine issue of material fact to be developed by Ludwig's discovery request. Ludwig claims he was denied information regarding Ford's and GM's knowledge about defective engines and frames in other Ford model CLT 9000 trucks. However, this information is irrelevant to the issue of whether or not Ludwig's trucks failed to perform as warranted.[5] Moreover, Ludwig acknowledges that he was aware of all the problems with the trucks almost as soon as he took delivery of them in 1979. Therefore, there is no information he could obtain from Ford or GM that would alter the fact that he was well aware of the grounds for claims of breach of warranty for more than three years before initiating any action. Ludwig fails to demonstrate, regarding alleged representations made by Ford and GM, why he needed to discover information from them regarding what might constitute an express warranty. Clearly, if any representations were made to Ludwig he would have been in a position to know enough to raise a question of fact, either by his deposition testimony or affidavit. In addition, if Ludwig saw advertisements, concerning the engines, which he relied upon, he was in a position to put that information before the court without the requested discovery. If Ludwig did not see any advertisements, then they could not constitute representations upon which he relied in purchasing the trucks and are, therefore, irrelevant. Finally, none of Ludwig's discovery papers address the relationship between Ford and Fairway Ford, GM and Fairway Ford, or Ford and GM. Therefore, any discovery in question would not have assisted Ludwig in any agency theory he pursued. Moreover, Ludwig does not mention any agency issue with regard to GM in his motion to correct er-

rors and it is therefore waived. *See Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92, 95. Thus, there were no genuine issues of material fact to be developed by Ludwig's requests.

In addition, Ludwig did not submit an affidavit pursuant to Ind. Rules of Procedure, Trial Rule 56(F) or otherwise make any showing that any specific information sought by his discovery requests directed to Ford or GM would be material to the issues raised by Ford's and GM's motions for summary judgment. Ludwig's brief does not refer to any particular items of the discovery that would be helpful. Additionally, Ludwig's motion to correct errors does not specify what particular information would be useful. We do not presume that a trial court erred. *Rohrkaste v. City of Terre Haute* (1984), Ind.App., 470 N.E.2d 738, 741, *trans. denied; English Coal Co., Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302, 307, *trans. denied.* In addition, an appellant has the burden of showing an erroneous and prejudicial ruling of the trial court. *Rohrkaste*, at 741–42; *Meeker v. Robinson* (1977), 175 Ind. App. 102, 109, 370 N.E.2d 392, 297. Ludwig has failed to demonstrate that his requests for discovery would have unearthed any question of·fact. Therefore, the trial court did not err in granting Ford's and GM's motions for summary judgment before requiring them to respond to Ludwig's discovery requests.

Judgment affirmed.

NEAL and BUCHANAN, JJ., concur.

---

**5.** *See supra* note 2 dealing with negligent design and manufacture.