**Glenn BROWN, et al., Plaintiffs–Appellants,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Defendant–Respondent.**

**No. 57020.**

Missouri Court of Appeals, Eastern District, Division Four.

July 17, 1990.

James Peter Leonard, St. Louis, for plaintiffs-appellants.

Richard A. Wunderlich, St. Louis, Kellee A. Dennis, Clayton, for defendant-respondent.

STEPHAN, Judge.

Thirty-three plaintiffs commenced this action against Monsanto Company in the Circuit Court of the City of St. Louis on February 28, 1986. Sixteen plaintiffs are or were employed by Westinghouse Electric Corporation at its Bloomington, Indiana plant, seven at its Muncie, Indiana plant and ten at its Cincinnati, Ohio plant. Plaintiffs alleged they were injured as a result of exposure to polychlorinated biphenyls ("PCBs") and other allegedly toxic chemicals manufactured by Monsanto. Plaintiffs also alleged that on January 15, 1972, Monsanto entered into an indemnity agreement with Westinghouse. This agreement was included with the petition and stated, in pertinent part:

  (a) PCBs tend to persist in the environment;

  (b) care is required in their handling, use and disposition; and

  (c) contamination of or adverse effect on humans was foreseeable.

An amended petition in which fifty-three plaintiffs joined, was filed on September 23, 1986. Monsanto was still the only

named defendant. Each plaintiff specifically alleged that Westinghouse manufactured capacitors and transformers containing PCBs, that each individual plaintiff was employed, or had been employed, by Westinghouse, and that, while employed, each individual plaintiff was dangerously exposed to chemicals which caused the plaintiff injury.

Plaintiffs' second amended petition was filed March 24, 1989; and, for the first time, Westinghouse was named as a defendant. The allegations against Monsanto were essentially unchanged. An additional intentional tort was alleged, that Westinghouse:

> [K]new and was aware of the dangerous propensities of PCBs, knew that persons such as Plaintiff would be exposed to the PCBs as a result of their employment, and knew that the exposure created great danger to Plaintiff of serious injury.
>
> [I]ntentionally exposed Plaintiff to PCBs in the workplace when it was substantially certain that Plaintiff would be injured.
>
> [I]ntentionally failed to warn Plaintiff of and/or deliberately concealed from Plaintiff the risks of exposure to PCBs.
>
> [D]eliberately withheld medical information from Plaintiff regarding his work-related exposure to PCBs.

On May 16, 1989, Westinghouse filed a motion to dismiss the second amended petition for the following reasons: failure to state a claim upon which relief can be granted; all plaintiffs' claims are barred by the applicable statutes of limitation; all Indiana plaintiffs' claims are barred by the exclusive remedy provisions of the Indiana Worker's Compensation Act and the Indiana Worker's Occupational Diseases Act; plaintiffs failed to allege that Westinghouse acted with specific intent toward each and every plaintiff; the Ohio plaintiffs failed to allege that they have initiated Workers' Compensation proceedings, a prerequisite to instituting a claim against an employer for intentional tort; Ohio Rev. Code § 4121.80(A) (Baldwin 1986) specifically provides jurisdiction to an Ohio court

on the issue of liability and to the Ohio Industrial Commission on the issue of damages; and, all plaintiffs purporting to be asserting claims as a result of an alleged death, fail to state a claim upon which relief may be granted under Missouri's Wrongful Death Statute.

Plaintiffs filed a memorandum in opposition to the motion to dismiss, along with the affidavits of Thomas E. Kotoske ("California Counsel") and David S. McCrae ("Indiana Counsel"), plaintiffs' attorneys of record. Both affidavits stated that they first became aware of Westinghouse's intentional acts in December 1988.

After further investigation, discovery and oral argument, the trial court issued the following order:

> Defendant Westinghouse Electric Corporation's motion to dismiss plaintiffs' Second Amended Petition, heretofore heard and submitted, is hereby SUSTAINED as to defendant Westinghouse Electric Corporation only.
>
> The Court finds that the above-styled cause constitutes a complex civil suit by multiple parties plaintiff against defendants seeking damages for injuries allegedly resulting from exposure to toxic substances due to defendants' alleged negligent and/or intentional acts or omissions. Further, the Court determines there is no just reason for delay of any appeal sought by a party or parties aggrieved by this Order. The Court, *sua sponte*, designates this Order to be final for purposes of appeal, pursuant to and in accordance with the provisions of Supreme Court Rule 74.01.[1]

Plaintiffs appeal from the trial court's order sustaining Westinghouse's motion to dismiss the second amended petition. We affirm.

■ Initially we note that, although Westinghouse filed a motion to dismiss, the trial court apparently considered matters outside the pleadings. The failure of the trial court to exclude matters outside the pleadings from its consideration transformed the motion to dismiss into a motion

---

1. Plaintiffs' action against defendant Monsanto Company is still pending.

for summary judgment. Rule 55.27(b); *Lawson v. St. Louis—San Francisco Railway*, 629 S.W.2d 648, 649 (Mo.App.1982). Further, while the parties have provided us with a voluminous record, it was not made clear precisely which documents were actually before the trial court. It is not the function of the appellate court to sift through material furnished by the parties on appeal to determine the exact nature of the evidentiary material submitted to the trial court. *Hill v. Air Shields, Inc.*, 721 S.W.2d 112, 116 (Mo.App.1986). It is a dangerous practice for attorneys to rely on this type of record. *See, Johnson v. Johnson*, 764 S.W.2d 711, 713 (Mo.App.1989). Since there is no transcript and we find no indication that either party objected to the evidence, we will consider what was presented to us in determining if there is a genuine issue of material fact. *Id.*

Review of summary judgment is equivalent to review of a court-tried or equity proceeding, and if, as a matter of law, the judgment is sustainable on any theory, the judgment of the trial court will be sustained. *Roberts Fertilizer, Inc. v. Steinmeier*, 748 S.W.2d 883, 886 (Mo.App.1988). Review is made of the entire record in a light most favorable to the party against whom summary judgment is entered. *Id.*

Plaintiffs raise five points on appeal. It is unnecessary for us to review all five because we find all but one claim is time barred by the applicable statutes of limitation. The other claim, we find, is barred by the exclusive remedy provisions of the Indiana Worker's Compensation Act.

## I

■ We are required to look to the law of the state from which a cause of action "originates" to determine the appropriate statute of limitations. § 516.190, RSMo 1986; *Renfroe v. Eli Lilly & Company*, 686 F.2d 642, 646 (8th Cir.1982) (applying Missouri law). The purpose of this "borrowing" is not to extend the procedural law of one state into another, but to adopt the statute of another state. *Trzecki v. Gruenewald*, 532 S.W.2d 209, 211 (Mo. banc 1976). Section 516.190, RSMo 1986, Missouri's borrowing statute, reads:

> Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state.

The word "originated", as used in the statute, means accrued. *Dorris v. McClanahan*, 725 S.W.2d 870, 871 (Mo. banc 1987). "[F]or the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment...." § 516.100, RSMo 1986. Missouri courts have borrowed the statute of limitations of another state when the last act necessary for the cause of action or the injury occurred outside Missouri. *Patch v. Playboy Enterprises, Inc.*, 652 F.2d 754, 755 (8th Cir.1981) (applying Missouri law).

All plaintiffs were employed by Westinghouse in either Indiana or Ohio, and, according to their pleadings, all were injured as a result of their employment. Their cause of action, therefore, originated in either Indiana or Ohio. This does not, however, present us with a conflicts of law problem. By enacting § 516.190, RSMo 1986, the Missouri legislature precluded a conflicts of law question because it effectively "borrowed" the law of other states. *Finnegan v. Squire Publishers, Inc.*, 765 S.W.2d 703, 707 (Mo.App.1989). Accordingly, the trial court properly applied the following statutes:

*Ind. Code Ann. § 34–1–2–2*

> The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards:
>
> (1) For injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute, within two (2) years.

*Ohio Rev. Code § 2305.10*

> An action for bodily injury or injuring personal property shall be brought with-

in two years after the cause thereof arose.

For purposes of this section, a cause of action for bodily injury caused by exposure to asbestos or to chromium in any of its chemical forms arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured by such exposure, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured by the exposure, whichever date occurs first.[2]

## II

■ As stated, *supra*, we need not examine conflicts of law principles in order to determine the applicable statutes of limitation. It is, however, necessary for us to apply conflicts principles in order to determine what substantive law should be applied.

In *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. banc 1969), our Supreme Court adopted the rule set forth in Restatement (Second) of Conflicts of Laws § 145, which reads:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

In the instant case, all plaintiffs are from Indiana or Ohio, Westinghouse's plants are in Indiana and Ohio, and the injuries, if any, all occurred in Indiana and Ohio. *See, Hicks v. Graves Truck Lines, Inc.*, 707 S.W.2d 439, 444 (Mo.App.1986); *Griggs v. Riley*, 489 S.W.2d 469, 471–472 (Mo.App. 1972). Applying the above factors to the present facts, we conclude that the substantive law of Indiana must apply to Indiana plaintiffs and Ohio law to the Ohio plaintiffs.

## III

### A. Indiana Plaintiffs

■ Under Indiana law, each of plaintiffs' claims could accrue no later than the date on which each plaintiff knew or should have discovered that he suffered an injury or impingement and that it was caused by the product or act of another. *Barnes v. A.H. Robins Company, Inc.*, 476 N.E.2d 84, 87–88 (Ind.1985). Plaintiffs, therefore, should have filed their petition against Westinghouse within two years of their original petition, February 28, 1986, because at that time they knew they had suffered an injury. Plaintiffs, however, argue that the statute of limitations was tolled because they alleged Westinghouse deliberately concealed the risks of exposure to PCBs from them. They rely on Ind. Code Ann. § 34–1–2–9, which states:

If any person liable to an action shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the cause of action.

Fradulent concealment does toll the statute of limitations, but concealment is narrowly

---

**2.** Westinghouse argues that Ohio Rev.Code § 4121.80, a one-year statute of limitations, might also apply. We disagree. Unless the circumstances of an action clearly indicate a battery or other enumerated intentional tort, a cause of action alleging bodily injury as a result of an intentional tort by an employer arising prior to the effective date of § 4121.80 (August 22, 1986) will be governed by the two-year statute of limitations established in Ohio Rev.Code § 2305.10, *Hunter v. Shenango Furnace Company*, 527 N.E.2d 871, 874 (Ohio 1988).

defined. *Tolen v. A.H. Robins Co., Inc.,* 570 F.Supp. 1146, 1151 (N.D.Ind.1983).

Generally, concealment must be active and intentional. *Ludwig v. Ford Motor Company,* 510 N.E.2d 691, 697 (Ind.Ct. App.1987). Mere silence on the part of a potential defendant will not constitute concealment absent a duty to speak. *Id.* The affirmative acts of concealment must be calculated to hinder and mislead a plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation. *Id.* Mere lack of knowledge is not enough to constitute concealment and toll the running of the statute. *Id.* Thus, to avoid the bar of limitations by claiming fraudulent concealment, a plaintiff must show that he used due diligence to detect the fraud. *Id.*

Plaintiffs argue that the affidavits of California and Indiana Counsel show the existence of active and intentional concealment of material facts by Westinghouse. California Counsel stated, in pertinent part:

5. It was not *until December 1988* that plaintiffs' counsel first learned that Westinghouse had acted intentionally with substantial certainty that plaintiffs would be injured by exposure to the PCBs being used at the Westinghouse plant; and, that Westinghouse had a specific purpose to injure plaintiffs by withholding vital information that Westinghouse had and knew of between 1957 to 1982 as to the adverse health effects attendant to exposure to PCBs. (emphasis in original)

Indiana Counsel stated, in pertinent part:

5. The information of Dr. T.O. Munson, confirmed in December, 1988, establishes that Westinghouse acted intentionally with substantial certainty that injury would result to employees and the environment, and that the known problems were concealed by Westinghouse in letters authored on September 16, 1975, and October 29, 1982.

In their original petition filed February 28, 1986, however, plaintiffs alleged the following:

2. On January 15, 1972 Monsanto knew that:

(a) PCBs tend to persist in the environment;

(b) care is required in their handling, use and disposition; and,

(c) contamination of or adverse effect on humans was foreseeable.

3. The information contained in rhetorical paragraph 2 was confirmed in an indemnity agreement which Monsanto forced Westinghouse to sign on January 15, 1972. * * * The indemnity agreement was kept secret from the Plaintiffs and the public at large. Monsanto Company fraudulently concealed this information from the Plaintiffs.

A superseded pleading is admissible against the party in whose behalf it was originally filed if it contains admissions against the interest of such party. *Fahy v. Dresser Industries, Inc.,* 740 S.W.2d 635, 642 (Mo. banc 1987).[3] When a plaintiff learns of information that would lead to the discovery of the cause of action through diligence, Indiana law holds that the statute of limitations begins to run regardless of concealment. *Miller v. A.H. Robins Company, Inc.,* 766 F.2d 1102, 1106–1107 (7th Cir.1985).

In that case, Miller filed an action against the manufacturer of her Dalkon Shield. She admitted she knew of her injuries more than two years prior to seeking recovery, but argued that she was unable to discover her cause of action until after the statute had run. Miller submitted her own affidavit and the affidavit of her physician. The doctor stated he did not recall advising Miller of any connection between the use of her Dalkon Shield and her pelvic inflammatory disease. Miller stated her physicians did not advise her of any connection between her illness and her use of the Dalkon Shield. Both affidavits were contradictory of Miller's earlier deposition tes-

---

**3.** Missouri courts generally adhere to the accepted principle that admissibility of evidence is governed by the law of the state where testimony is to be heard. *Rosser v. Standard Milling Company,* 312 S.W.2d 106, 110 (Mo.1958).

timony at which she stated, three times, that her doctors told her the Dalkon Shield was a possible source of her infection. She argued, however, that this created an issue of fact regarding when she knew or should have discovered her illness.

The Seventh Circuit concluded that a party cannot thwart discovery by creating issues of fact through affidavits that contradict their own depositions. *Id.* at 1104. In the instant case, plaintiffs were aware that Westinghouse had knowledge of the dangers of PCBs in 1986. At that time they were aware of information that would lead to the discovery of their cause of action against Westinghouse. *Id.* at 1106–1107. The statute of limitations, therefore, had begun to run at least by February 28, 1986 and plaintiffs' second amended petition against Westinghouse, filed March 24, 1989, was filed out of time.

### B. Ohio Plaintiffs

■ The analysis under Ohio law is essentially the same. Plaintiffs' cause of action arose when they were informed by competent medical authority that they were injured, or upon the date on which, by the exercise of reasonable diligence, they should have become aware that they had been injured, whichever occurred first. *O'Stricker v. Jim Walter Corporation*, 4 Ohio St.3d 84, 447 N.E.2d 727, 732 (1983). Plaintiffs were aware of Westinghouse's knowledge of the dangers inherent in PCBs in 1986, when the original petition was filed.

Ohio law provides, that in order for the rule on fraudulent concealment to apply, there must be something of an affirmative character designed to prevent, and which does prevent, discovery of the cause of action, some actual artifice to prevent knowledge of the fact, some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry. *Baldridge v. Toombs*, 189 N.E.2d 177, 180 (Ohio Ct. of Common Pleas 1962), aff'd, 118 Ohio App. 229, 189 N.E.2d 635 (1962). Plaintiffs did not allege they were prevented from exercising due diligence to discover their cause of action. As with the

Indiana plaintiffs, the statute of limitations began to run in 1986 and the second amended petition against Westinghouse was filed out of time.

### IV

■ Plaintiff Washburn, an employee at Westinghouse's Muncie, Indiana plant, did not join the action until the second amended petition was filed. We find, however, that even if the two-year Indiana statute of limitations is inapplicable to Washburn, he is still barred by the exclusive remedy provisions of Indiana's Worker's Compensation Act.

Washburn alleged that he was an employee at the Muncie, Indiana plant, and, that as a result of his employment, he was exposed to PCBs and injured. Ind.Code Ann. § 22–3–2–6 provides:

> The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 [Worker's Compensation Act] on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death
>
> . . . .

Ind.Code Ann. § 22–3–2–6 excludes all rights and remedies of an employee against his employer for personal injury or death if the following three statutory jurisdictional requirements are met: a) personal injury or death by accident; b) personal injury or death arising out of employment; c) personal injury or death arising in the course of employment. *Evans v. Yankeetown Dock Corporation*, 491 N.E.2d 969, 973 (Ind.1986).

Here, it is undisputed, and alleged by Washburn, that the injury arose out of and in the course of employment. The question presented, then, is whether the injury was "by accident" or was the result of an intentional act.

A naked allegation of an intentional tort is not adequate to permit a claimant to avoid the exclusive remedy provision of the Indiana Worker's Compensation Act. *Tribbett v. Tay Mor Industries, Inc.*, 471

N.E.2d 332, 333 (Ind.Ct.App.1984). Plaintiff must be able to prove that the employer had the actual intent to cause the harm. *National Can Corporation v. Jovanovich*, 503 N.E.2d 1224, 1233 (Ind.Ct.App.1987).

[T]he mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong.

*Tribbett*, 471 N.E.2d at 333–334, citing *Cunningham v. Aluminum Company of America*, 417 N.E.2d 1186, 1190 (Ind.Ct. App.1981).

Washburn has failed to allege that Westinghouse's actions were any more than gross negligence. The action is, therefore, within the exclusive remedy provisions of the Worker's Compensation Act.

### V

The trial court did not err in granting summary judgment to Westinghouse. The judgment is, therefore, affirmed.

HAMILTON, P.J., and CARL R. GAERTNER, J., concur.